# Daws v. Commonwealth.

December 12, 1950.

R. C. Tartar, Judge.

Fritz Krueger for appellant.

A. E. Funk, Attorney General, John B. Browning, Assistant Attorney General and Russell Jones, Commonwealth Attorney for appellee.

CHIEF JUSTICE SIMS—Reversing.

Clarence Daws was convicted of the offense of maliciously shooting at Bert Daulton with intent to kill but without wounding Daulton, and his punishment was fixed at confinement in the penitentiary for two years. He asks that the judgment be reversed because the court erred: (1) in the admission and rejection of evidence; (2) in instructing the jury.

The Commonwealth's proof is to the effect that between 5:30 and 6:00 o'clock p. m. on January 9, 1949, Daulton while driving a truck, in which were his wife and children, on a county road about 125 yards from the Nazarene Church at Naomi in Pulaski County, met Clarence Daws on the road. When the truck approached within a few feet of Daws, he drew a pistol from his pocket and without provocation fired at Daulton but the bullet neither hit Daulton nor his truck. Appellant denies firing the shot and proved an alibi.

Milburn Tarter testified that appellant was at the Church and left walking along the road in the opposite direction from his home. In a minute or two after appellant left, the witness heard a pistol shot from the direction in which appellant had gone. Within "just a minute or so, a short time" Daulton drove up to the Church in his truck on the road and from the direction Daws had taken. "About three minutes, I guess" after Daulton arrived at the Church the witness heard Daulton say Daws shot at him. Appellant's objection to this testimony was overruled. Winfred Daulton, a son of Bert, was at the Church and gave practically the same testimony as did the witness Tarter, and appellant's objection thereto was likewise overruled.

The minister of the Church, Willard Young, was introduced before Tarter and Winfred Daulton testified and gave practically the same testimony as they did, except he put it, "Bert Daulton, and his little children, they got out of the truck and said that Clarence Daws shot at them." The court sustained appellant's objection thereto and admonished the jury "not to consider the remark of the witness as to what these people said."

We are at a loss to understand why the court after excluding Young's testimony as to what was said at the Church relative to the shooting, subsequently admitted the same character of testimony given by Tarter and Winfred Daulton.

It is manifest the testimony as to what Bert Daulton said three minutes after arriving at the Church, that appellant had shot at him 100 or 125 yards down the road, is incompetent as hearsay, unless it is a part of the res gestae. A declaration to be admissible as res gestae must be substantially contemporaneous with the shooting and illustrate, elucidate, or explain the manner in which the shooting was done. Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. 2d 29, 32. As was written in the Stewart case, "The exclamation must be the act talking for itself, not the person talking about the act. It must be the apparently spontaneous result of the occurrence operating upon the perceptive senses of the speaker."

Tested by this rule, the statement of Bert Daulton made after he had driven slowly in his truck 100 or 125 yards from the place of the shooting to the Church and after he had been at the Church for three minutes, is not admissible as part of the res gestae. Certainly, it was not spontaneous on the part of Bert Daulton. Nor was it substantially contemporaneous with the firing of the shot. Instead of it being the shot talking for itself, the statement was Daulton talking for the shot.

The instant case is much like Barton v. Commonwealth, 238 Ky. 356, 38 S. W. 2d 218, where it was said a statement by deceased that Barton and Vittitoe had beaten him, made to friends within three minutes and within thirty-nine steps after they had left Barton and Vittitoe, was not competent as part of the res gestae.

At first blush, Norton's Adm'r v. Winstead, 218 Ky. 488, 291 S. W. 723, appears to be in conflict with what is here said. But it is not. What was written there is distinguishable from the instant case not as to the point of time, but as to the place where it was spoken in relation to the place where the shooting occurred. The time of the statement there, as well as here, was about three minutes after the shooting, but in the Winstead case the statement was made at the place where the shot was fired, while here it was made from 100 to 125 yards from the place of the shooting. Therein lies the distinction.

Likewise, Roberts v. Louisville Railway Company, 168 Ky. 230, 181 S. W. 1131; and Barrett's Adm'r v.

Brand, 179 Ky. 740, 201 S. W. 331, relied upon by the Commonwealth, differ from the instant case, as in them the statement was made at the time and place of the transaction.

While we would not be understood as saying a statement to be admitted as part of the res gestae must be made at the place of the occurrence of the act, since the factual situation in each case will set its pattern, 20 Am. Jur., Evidence, section 669, page 562, we do hold the statement here made three minutes after Daulton arrived at the Church, which was 100 yards or more from the scene of the shooting, was too remote to be admitted as part of the res gestae.

There had been much bad feeling existing between Daulton and Daws and their families. Carl Daws, father of appellant, was convicted of shooting and wounding Hulan Tarter, Daws v. Commonwealth, 309 Ky. 362, 215 S. W. 2d 1016. Bert was convicted of shooting Carl Daws from ambush later in the same day that Carl shot Tarter. Daulton v. Commonwealth, 310 Ky. 141, 220 S. W. 2d 109. The instant case is a close one on the facts and as the statement by Daulton three minutes after arriving at the Church added much weight to his identification of appellant as the one who fired the shot, such incompetent testimony was prejudicial to appellant's substantial rights. Therefore, the judgment must be reversed for the court's error in admitting it over appellant's objection.

The other incompetent evidence complained of is that when appellant proved his good moral reputation, the court permitted the commonwealth attorney to ask the character witnesses on cross-examination if they had heard of appellant being publicly drunk, or drunk while carrying the mail. or if his reputation was not that of a common drunkard. This character of cross-examination was improper since it tended to reflect appellant's reputation for sobriety rather than his moral reputation.

It is urged by appellant the court erred in excluding testimony he offered to the effect that Daulton never attempted to get an indictment against him until after his conviction had been affirmed for shooting appellant's father, citing page 42 of the record. That page

shows no such evidence was excluded, nor is it shown elsewhere in the record. At another place in the evidence (page 79) the court correctly permitted Daulton to be asked on cross-examination if he had not stated he had been convicted of shooting Carl Daws, appellant's father, and had spent $1,400 in defending the charge and he was going to get even.

The only complaint made of the instructions is that the court did not include one on shooting in sudden affray. There was no evidence upon which to base such an instruction. The eyewitnesses for the commonwealth testified appellant shot at Daulton without a word passing between them and without provocation. The defense was an alibi. Clearly, there was no place for a sudden affray instruction in the case.

The judgment is reversed for proceedings consistent with this opinion.