**Charles Michael SMITH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 89–SC–044–MR.**

Supreme Court of Kentucky.

March 15, 1990.

Rehearing Denied May 24, 1990.

G. Murray Turner, Mulhall, Turner and Hoffman, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., David A. Sexton, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

COMBS, Justice.

Appellant was convicted in the Jefferson Circuit Court of wanton murder and first-

degree burglary, and sentenced to thirty-five years in prison.

In seeking a reversal he assigns several errors. A brief summary of the evidence is necessary in order to treat and dispose of his various contentions.

Someone broke into Margaret Cecil's apartment on the morning of September 22, 1987, armed with a .410 gauge shotgun. The intruder shot and killed Cecil's boyfriend, Michael Foley.

Appellant, Cecil's former boyfriend, arrived at a bar between 2:10 a.m. and 2:20 a.m. and asked to use the telephone. The bartender, Dorothy Slater, Cecil's sister, refused to allow him to do so. Appellant left the bar sometime between 2:20 a.m. and 2:40 a.m. Slater called Cecil to alert her that she believed appellant was enroute to Cecil's apartment.

Cecil called the police at 2:41 a.m. and reported a shooting at her apartment. The dispatcher asked who had been shot, and Cecil said Michael Foley. The dispatcher then asked who had shot Foley, and Cecil named the appellant. The dispatcher called Cecil a second time to get further information. Again, in response to the question of who had shot Foley, Cecil named appellant.

The police investigation at the scene found a spent .410 gauge shotgun hull inside Cecil's bedroom door. No other physical evidence was found on the appellant's person, in his truck, or his house.

The police went to appellant's house at 3:00 a.m. Appellant answered the knock and appeared to the officer to have been asleep. A detective testified that while in the area of appellant's house he questioned appellant's father. According to the detective, the father stated that he owned a .410 gauge shotgun, but that he had no idea where it was. At trial, the father denied making this statement.

Three months later, appellant and Margaret Cecil were married in Tennessee. The next month Margaret Cecil Smith and her sister, Janie Benton, went to Florida and Tennessee, and upon returning to Elizabethtown, Kentucky, met appellant. The three returned to Nashville, Tennessee.

Benton testified at trial that during this trip the appellant confided to both women that he had shot Michael Foley with a "rifle."

■ Appellant argues that the trial court erred when it allowed Margaret Cecil Smith to assert her privilege of spousal immunity, but allowed into evidence the statements she made to the police dispatcher which named appellant as the killer under the "excited utterance" exception to the rule against hearsay testimony.

KRS 421.210(1) provides:

> In all actions between husband and wife ... either or both of them may testify as other witnesses, except as to confidential communications between them during marriage, ... and provided further, that neither may be compelled to testify for or against the other.

In *Miller v. Carter,* Ky., 500 S.W.2d 600 (1973), the Court reversed the lower court because the trial judge had compelled the husband to testify. "We have repeatedly stated that neither the husband nor the wife can be compelled to testify for or against the other, but the refusal to do so is the prerogative of the witness." *Supra,* at 600.

Margaret Cecil properly exercised that prerogative in asserting her immunity. Margaret was not married to appellant at the time of the shooting when she reported it to the police.

Lawson, in *Kentucky Evidence Law Handbook,* 8.60(B) (2d ed. 1984) states:

> A "spontaneous" statement is one uttered under the stress of nervous excitement and not after reflection or deliberation.

We have adopted Lawson's definition as the general rule for admitting proffered testimony as an excited utterance, including his list of eight criteria considered to be the most significant. *Souder v. Commonwealth,* Ky., 719 S.W.2d 730 (1986).

The appellant seizes upon a few of these criteria to make the argument that the statements were not qualified to be admitted as excited utterances. We are not con-

vinced, and believe that they were properly admitted under that exception.

Appellant hypothesizes that the time between the shooting and the first utterance could have been as long as 26 minutes. The amount of time between the act and the utterance is to be considered, we have no question about that. Appellant also states that because the utterances were in response to questions they fail to satisfy another criterion in Lawson's list. He also believes that two other criteria are not met, i.e., the place of the declaration, and the presence of visible results of the act.

We do not believe that the declarant was badgered into giving the answers she gave. Moreover, even if 26 minutes had elapsed, the deeply traumatic nature of a close range shotgun killing is hardly an event over which a person who witnessed it could regain her composure and reflect upon a fabricated answer in 26 minutes. Additionally, within these 26 minutes the declarant obviously was in the presence of the deceased because she reported the killing and said that the victim was not breathing anymore. These facts also make it obvious that "visible results of the act" were present, i.e., the body.

It must be borne in mind that *Souder* is not a strict true-false test for the admission of excited utterances, but provides guidelines for consideration. The passage of three minutes may be too long, so as to disqualify a statement as a spontaneous utterance. *Daws v. Commonwealth*, 314 Ky. 265, 234 S.W.2d 953 (1950). However, much depends upon the nature of the act or occurrence causing the excitement. Considering the circumstances of this case, the passage of 26 minutes does not disqualify the statement as spontaneous. We believe the contested declarations were properly admitted.

■ Appellant's next argument is that the trial court erred by instructing the jury on the offense of wanton murder. He contends that there was no evidence to support the instruction. We disagree. Janie Benton testified that the appellant said he did not mean to shoot the victim, and the appellant himself stated that when he saw the victim standing beside the bed he simply lost control of himself and shot.

Appellant's next argument is that the trial court erred by refusing to allow medical records of the mental instability of a witness due to relevancy. We agree that the records were relevant, and therefore competent for admission in that respect. However, KRS 422.305 required defense counsel to give proper notice to the prosecution. This was not done, therefore, the trial court made the correct ruling, albeit for the wrong reason.

■ Appellant's next alleged error was the action of the trial court in permitting the videotaped deposition of a forensic pathologist to be introduced into evidence. The Commonwealth explained that the pathologist would be out of town, and thus unavailable to testify, at the time of trial. Appellant's counsel was present during the deposition and cross-examined the pathologist. Under the circumstances of this case, we fail to see any prejudice that appellant may have suffered by the admission into evidence of this videotape.

■ Appellant's final alleged error concerns the ruling of the trial court in permitting a detective to remain in the courtroom after appellant's objection. The detective was sitting at the prosecution table. Notwithstanding appellant's objection, the court permitted his testimony which was largely cumulative. RCr 9.48 gives a trial judge a modicum of discretion. We cannot say, under the circumstances, that the trial judge abused his discretion in permitting the detective to testify.

We affirm the judgment of the Jefferson Circuit Court.

All concur.