**Kenneth Ray NOEL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2000–SC–0527–DG.

Supreme Court of Kentucky.

June 13, 2002.

R. Burl McCoy, Tonya S. Conner, McCoy & West, Lexington, KY, for appellant.

A.B.. Chandler, III, Attorney General, State Capitol, Frankfort, KY, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

COOPER, Justice.

Appellant Kenneth Ray Noel was convicted in the Fayette Circuit Court of sexual abuse in the first degree, KRS 510.110(1)(b)2, and was sentenced to two years in prison. The Court of Appeals affirmed, and we granted discretionary review to consider certain evidence issues raised by the facts of this case. We now affirm both the Fayette Circuit Court and the Court of Appeals.

In November 1997, the victim, C.M., then age five, resided with her mother and stepfather, Angela and Steve Ethington. Clotene Noel is Angela Ethington's mother and C.M.'s grandmother. Appellant is Clotene's husband and C.M.'s stepgrandfather. Angela Ethington and C.M.'s father, Mark M., were divorced in 1996. They had joint custody of C.M. with Angela being the primary physical custodian and Mark having scheduled visitation rights. Mark was paying court-ordered child support to Angela for the benefit of C.M. The Noels, the Ethingtons and Mark M. all resided in Lexington, Fayette County, Kentucky.

C.M. spent the night of Monday, November 24, 1997, at the Noels' residence. Because she did not like to sleep alone in the guest bedroom, she slept in the same bed with Appellant and his wife. C.M. testified at trial that, while she was lying in bed between Appellant and his wife, Appellant placed his hand inside her underpants and touched her vaginal area with his index finger. She further testified that Appellant had done this "more than one time" but did not specify whether the other time(s) occurred on that same occasion or on (a) different occasion(s).

On Wednesday, November 26, 1997, C.M. and her father, Mark M., drove to Inez, Martin County, Kentucky, to spend the Thanksgiving weekend with Mark's girlfriend, Roxanne Maynard, and Roxanne's sixteen-year-old daughter, Brandy Maynard. Brandy testified at trial that on Saturday, November 29, 1997, she was in her bedroom talking on the telephone when C.M. entered the room and began licking her (Brandy's) leg. When Brandy asked C.M. what she was doing, C.M. covered her ears and said she did not want to talk about it. When Brandy persisted, C.M. asked if Brandy's grandfather had ever touched her "in a way that she didn't think was right." Brandy said "No," then told C.M. that if her grandfather had touched her in that way, she should tell her father, Mark. When C.M. responded that she did not want to get in trouble, Brandy told her, "You can tell me." C.M. then told Brandy that Appellant had touched her between the legs with his hand. According to Brandy, C.M.'s demeanor at the time she made this statement was "sad." Brandy reported this information to her mother, Roxanne, who

reported it to Mark, who called the police. A social worker arrived on Sunday morning to commence the investigation that ultimately led to Appellant's indictment. Appellant asserts that Brandy Maynard's repetition at trial of C.M.'s out-of-court statement should have been suppressed as inadmissible hearsay. KRE 801(c); KRE 802.

## I. EXCITED UTTERANCE, KRE 803(2).

The trial judge concluded that C.M.'s statement to Brandy Maynard was admissible under the "excited utterance" exception to the hearsay rule. KRE 803(2). Under that exception, the following is admissible even though hearsay:

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

 The premise for the exception is that statements made under the stress of the excitement caused by a startling occurrence are more likely the product of that excitement and, thus, more trustworthy than statements made after the declarant has had an opportunity to reflect on events and to fabricate. *Morgan v. Foretich*, 846 F.2d 941, 946 (4th Cir.1988); *Mounce v. Commonwealth*, Ky., 795 S.W.2d 375, 379 (1990); Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.60, at 454–56 (3d ed. Michie 1993). For an out-of-court statement to qualify for admission under KRE 803(2), "it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation." *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980) (gathering cases), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). We have identified the following factors as relevant to a determination of whether an out-of-court statement is admissible under KRE 803(2):

(i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

*Jarvis v. Commonwealth*, Ky., 960 S.W.2d 466, 470 (1998) (quoting the pre-code case of *Souder v. Commonwealth*, Ky., 719 S.W.2d 730, 733 (1986)). We have also clarified that these factors do not pose a true-false test for admissibility but, rather, are guidelines to be considered in determining admissibility. *Jarvis, supra*, at 470 (citing the pre-code case of *Smith v. Commonwealth*, Ky., 788 S.W.2d 266, 268 (1990), *cert. denied*, 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990)). Finally, we have held that, in a close case, "the trial court's decision to admit or exclude the evidence is entitled to deference." *Souder, supra*, at 733. As we stated in *Young v. Commonwealth*, Ky., 50 S.W.3d 148 (2001), however, "[t]hat is but another way of saying that when the determination depends upon the resolution of a preliminary question of fact, the resolution is determined by the trial judge under KRE 104(a) on the basis of a preponderance of the evidence" and is reviewed under a "clearly erroneous" standard. *Id.* at 167 (citing *Commonwealth v. Deloney*, Ky., 20 S.W.3d 471, 473–74 (2000)). Of course, the party seeking admission of hearsay evidence has the burden to prove that it falls within an exception to the hearsay rule. *Slaven v. Commonwealth*, Ky., 962 S.W.2d 845, 854 (1997); *Jarvis, supra*, at 470.

■ The Court of Appeals concluded that the trial judge's KRE 104(a) finding that C.M.'s statement to Brandy Maynard was an "excited utterance" was clearly erroneous. We agree. The statement was made five days after the startling occurrence and, though C.M. was acting strangely prior to making the statement, she was not exhibiting excitement when the statement was made. Nor was the statement made at the place where the described event occurred or in the presence of any visible results of the act or occurrence to which the statement related. Further, the statement was not spontaneous but in response to interrogation, albeit C.M. initially raised the issue by inquiring as to whether Brandy had ever been improperly touched by her (Brandy's) grandfather.

The trial judge ruled the statement admissible based upon a factual representation by the prosecutor that Saturday, November 29th, was C.M.'s first opportunity to discuss this incident outside the presence of Appellant or Appellant's wife. In fact, Brandy Maynard testified to C.M.'s out-of-court statement before the Commonwealth presented evidence that C.M. was outside of the Noels' presence and at home with her mother and stepfather on November 25th and part of November 26th, and that she was with her father at the Maynard residence in Martin County from November 26th until the statement was made on the afternoon of November 29th. The Commonwealth primarily relies on the case of *Morgan v. Foretich, supra,* in support of its theory that "the first opportunity to report" is a significant factor in determining whether a child victim's report of sexual abuse can be classified as an excited utterance. However, in *Morgan,* the report was made within a few hours of the child's removal from the influence of the perpetrator. *Id.* at 947. In *McClure v. Commonwealth,* Ky.App., 686 S.W.2d 469 (1985), the only Kentucky case finding that a delayed report was an "excited utterance," the delay was only thirty to fifty minutes after the first opportunity to report. *See also United States v. Nick,* 604 F.2d 1199, 1202 (9th Cir.1979) (the same day); *People v. Sandoval,* 709 P.2d 90 (Colo.Ct.App.1985) (fourteen hours); *Brantley v. State,* 177 Ga.App. 13, 338 S.E.2d 694 (Ct.App.1985) (several hours); *People v. Nevitt,* 135 Ill.2d 423, 142 Ill.Dec. 854, 553 N.E.2d 368 (1990) (five hours); *State v. Rodriquez,* 8 Kan.App.2d 353, 657 P.2d 79 (Ct.App.1983) (four hours); *People v. Pottruff,* 116 Mich.App. 367, 323 N.W.2d 402 (Ct.App.1982) (less than twenty-four hours); *Love v. State,* 64 Wis.2d 432, 219 N.W.2d 294 (1974) (the following day). We are cited to no case holding that a statement made more than twenty-four hours after the first opportunity to report was an "excited utterance." Furthermore, the mere fact that a statement was made soon after the first opportunity to report would not support a finding that the statement was an "excited utterance" in the absence of other relevant factors discussed *supra.*

Thus, we agree with the Court of Appeals that the facts of this case do not support a finding that C.M.'s statement to Brandy Maynard falls within the "excited utterance" exception to the hearsay rule. *Mounce v. Commonwealth, supra,* at 379.

## II. PRIOR CONSISTENT STATEMENT, KRE 801A(a)(2).

■ C.M.'s statement to Brandy Maynard was a prior statement consistent with her testimony at trial. KRE 801A(a)(2) permits admission of a prior consistent statement only if it is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." One theory of the

defense was that C.M. had been improperly influenced by her father, Mark M., to falsely accuse Appellant of sexual abuse. Defense counsel vigorously cross-examined C.M. in an attempt to prove that theory:

Q. Have you told your stepdad, Steve, that your Dad, Mark, asked you to say this?

A. He told me what to say.

Q. Mark did?

A. He said, "Do you know what to say?" and I said, "Yes."

. . .

Q: Did you tell Steve that "Mark told me to tell this story about papaw [Appellant]"?

A. He told you?

Q. No, did you tell Steve that?

A. What?

Q. Did Steve say: "[C.M.], where did this come from? Did your dad, Mark, tell you to say this?"

A. [No response.]

. . .

Q. About two weeks ago, did your stepdad, Steve, ask you this: "[C.M.], did Mark put you up to saying this?"

A. I think he did.

Q. And didn't you say, "I think he did; that Mark told me to say that?" What did you tell Steve?

A. I don't know what you're saying?

Q. You don't know what I'm saying?

A. I don't know what to say.

. . .

Q. About two weeks ago, did Steve ask you anything about what your dad, Mark, had told you to say?

Q. I don't know what you are saying?

Q. Did your dad, Mark, tell you what to say?

A. I think he did.

Q. Was that back last year in November?

A. I don't know.

. . .

Q. Did you tell Amanda that your Dad, Mark, told you to tell this story?

A. No. [Amanda, C.M.'s cousin, did not testify at trial.]

. . .

Q. Are you saying that Mark might have told you or did tell you to tell this story about your papaw?

A. I don't know.

Q. You don't know whether he told you or didn't tell you?

A. He told me, "Do you know what to say?" and I said, "Yes."

Obviously, this line of questioning was designed to imply that C.M.'s accusations were the product of improper influence by her father, Mark M. That implication sufficed to trigger the "improper influence" exception to the general rule of inadmissibility of a prior consistent hearsay statement under KRE 801A(a)(2). *Schambon v. Commonwealth*, Ky., 821 S.W.2d 804, 811 (1991); *see also United States v. Montague*, 958 F.2d 1094, 1096 (D.C.Cir.1992) (interpreting FRE 801(d)(1)(B), the federal counterpart of KRE 801A(a)(2)). However, the exception generally applies only if the prior consistent statement predated the improper motive or influence alleged to have produced it. *Cf. Slaven v. Commonwealth, supra,* at 858 (applying the premotive limitation to an allegation of recent fabrication); *Smith v. Commonwealth*, Ky., 920 S.W.2d 514, 517 (1995) (same); *see also Tome v. United States,* 513 U.S. 150, 167, 115 S.Ct. 696, 705, 130 L.Ed.2d 574 (1995) (interpreting FRE 801(d)(1)(B)). C.M.'s version of Appellant's criminal conduct has not changed since her initial statement to Brandy

Maynard on November 29, 1997. Thus, if the November 29, 1997, statement was offered solely to prove the truth of its content, it could not have been admitted under KRE 801A(a)(2). However, the statement was offered primarily for rehabilitative, not substantive, purposes.

The prior consistent statements admitted in *Tome, supra,* were offered solely for substantive purposes. ("Although those statements might have been probative on the question whether the alleged conduct had occurred, they shed but minimal light on whether A.T. had the charged motive to fabricate." *Id* at 165, 115 S.Ct. at 705.) *Tome* specifically "intimate[d] no view ... concerning the admissibility of any of A.T.'s out-of-court statements under ... any other evidentiary principle." *Id.* at 166, 115 S.Ct. at 705. Thus, in *United States v. Ellis,* 121 F.3d 908 (4th Cir.1997), *cert. denied,* 522 U.S. 1068, 118 S.Ct. 738, 139 L.Ed.2d 674 (1998), a post-motive prior consistent statement was held admissible for the purpose of rehabilitation because the statement had "some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." *Id.* at 920. And in *United States v. Simonelli,* 237 F.3d 19, 26–27 (1st Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 54, 151 L.Ed.2d 23 (2001), a post-motive prior consistent statement was held admissible for a purpose other than mere proof of the truth of its contents. *Accord: Holmes v. State,* 350 Md. 412, 712 A.2d 554, 560 (1998); *State v. Brown,* 126 N.M. 338, 969 P.2d 313, 325–27 (1998); *State v. Church,* 167 Vt. 604, 708 A.2d 1341, 1342 (1998).

Here, the implication arising from the cross-examination of C.M. was that her father had improperly influenced her to accuse Appellant of sexual abuse. Brandy Maynard's testimony showed that C.M.'s first report of abuse was not to the police,

or to a social worker, or even to an adult, but to a teenage "friend," and only with apparent reluctance and after substantial coaxing. Perhaps more importantly, C.M.'s father was not present when C.M. reported the abuse to Brandy. Thus, the circumstances under which the report was made tended to rebut the inference that C.M.'s accusation was the product of improper influence by her father; and, thus, the evidence had "some rebutting force beyond the mere fact that the witness ha[d] repeated on a prior occasion a statement consistent with [her] trial testimony." *United States v. Ellis, supra,* at 920. We conclude that the trial judge's decision to admit this evidence was correct even though for the wrong reason. *Tamme v. Commonwealth,* Ky., 973 S.W.2d 13, 31 (1998), *cert. denied,* 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999); *Jarvis v. Commonwealth, supra,* at 469; *Smith v. Commonwealth,* Ky., 788 S.W.2d 266, 268 (1990), *cert. denied,* 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990).

### III. PRIOR STATEMENT OF WITNESS, KRE 613.

Steve Ethington, C.M.'s stepfather, was a witness for the defense. The following was elicited during his testimony:

Q. Did [C.M.] ever tell you that the alleged touching by Mr. Noel did not happen?

A. Yes.

The trial judge sustained the Commonwealth's objection to this testimony and admonished the jury to disregard both the question and the answer, reasoning that C.M. had not been asked on cross-examination if she had told her stepfather "that the alleged touching by Appellant did not happen." KRE 613(a) provides in pertinent part:

 Before other evidence can be offered
 of the witness having made at another

time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them. . . .

Most, but not all, of the Kentucky Rules of Evidence are identical to the corresponding Federal Rules of Evidence, and, in fact, the version of KRE 613 proposed by the drafters of the Kentucky Rules was identical to FRE 613. See proposed KRE 613, Evidence Rules Study Committee (Final Draft 1989). The Kentucky Supreme Court, however, decided not to adopt the more liberal federal rule but to retain the language contained in Civil Rule (CR) 43.08 which, in turn, had retained the language of section 598 of the old Kentucky Code of Civil Practice (CCP). The same rule had been followed in criminal cases as a matter of common law since at least 1883. *Craft v. Commonwealth*, 81 Ky. (4 J.Rodm.) 250 (1883). CCP § 598, CR 43.08, and now KRE 613(a) are codifications of a common law rule first enunciated in *Queen Caroline's Case*, 129 Eng. Rep. 976 (1820). *See Fisher v. Duckworth*, Ky., 738 S.W.2d 810, 815 (1987). Perhaps the best explanation of the rationale behind the rule was expressed in *Cole v. State*, 65 Tenn. 239 (1873).

Where it is intended to impeach the witness by proving that he made statements out of court contrary to what he has testified in court, the witness should be asked whether he said or declared that which it is proposed to prove by the impeaching witness, that he did say or declare, and the time and place and person to whom the declaration was made should be stated in the question.

The object of the question is to contradict him, and it is but fair to the witness to refresh his recollection as to the declaration or words used and proposed to be proved, and also by stating time, place and other circumstances calculated to refresh his memory.

If the time, place and person to whom the declaration was made is stated, and also the words or their substance, or the declaration is stated in the question, and the witness answers that he does not recollect, evidence may be given on the other side to prove that the witness did say what is imputed to him, otherwise you could never contradict a witness who said he could not remember.

*Id.* at 241 (citations omitted).

■ Even our more modern cases have consistently required strict compliance with the foundation requirements of CR 43.08 and KRE 613(a). *Foley v. Commonwealth*, Ky., 953 S.W.2d 924, 935–36 (1997), *cert. denied*, 523 U.S. 1053, 118 S.Ct. 1375, 140 L.Ed.2d 522 (1998); *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380, 383 (1990), *overruled on other grounds*, *Garrett v. Commonwealth*, Ky., 48 S.W.3d 6 (2001); *Fisher v. Duckworth, supra*, at 815–17; *McQueen v. Commonwealth*, Ky., 721 S.W.2d 694, 701 (1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987). The rule was slightly relaxed in *Kinser v. Commonwealth*, Ky., 741 S.W.2d 648 (1987), which held that failure to inquire as to the date and time of the statement was not fatal where the witness admitted having the conversation but denied making the statement in question during that conversation. Of course, that exception does not apply here. Appellant asserts that the rule should be further relaxed in this case because of C.M.'s tender years and the alleged difficulty in cross-examining her. We note that, although the opinion in *Drumm, supra*, did not state the age of the witness/victim at the time of his testimony, it did state that he was six years old at the time the sexual offense was perpetrated against him. *Id.* at 380. And while it is sometimes difficult

to elicit desired responses during cross-examination of a child of tender years, the fact remains that, here, the question was never asked. Thus, the trial judge correctly admonished the jury to disregard the impeachment evidence elicited from Steve Ethington.

## IV. OTHER RULINGS EXCLUDING EVIDENCE, KRE 103(a)(2).

█ Ordinarily, a trial court ruling excluding evidence must be preserved for appellate review by an avowal of the witness. KRE 103(a)(2); *Commonwealth v. Ferrell,* Ky., 17 S.W.3d 520 (2000). Otherwise, the reviewing court has no way of knowing exactly what testimony was excluded and whether the exclusion was prejudicial to the offering party. *Ferrell, supra,* at 525. The ruling excluding Steve Ethington's proposed testimony was reviewable because Ethington answered the question before the ruling was made on the objection; thus, we had all the information a reviewing court needs in order to decide the issue. *Underhill v. Stephenson,* Ky., 756 S.W.2d 459, 461 (1988). However, that is not true with respect to other evidence excluded by the trial judge during the testimonies of C.M. and her mother, Angela Ethington. The side-bar avowals with respect to this evidence did not suffice to preserve these issues for appeal. *Ferrell, supra,* at 523–24. "Counsel's ver-

sion of the evidence is not enough. A reviewing court must have the words of the witness." *Partin v. Commonwealth,* Ky., 918 S.W.2d 219, 223 (1996).

## V. OTHER CRIMES, WRONGS OR ACTS, KRE 404(b).

█ Appellant asserts that admission of C.M.'s testimony that Appellant had sexually abused her "more than one time" violated the KRE 404(b) proscription against admission of evidence of other crimes, wrongs, or acts. However, this testimony falls within the exceptions for evidence offered to prove intent, plan, or absence of mistake or accident. KRE 404(b)(1). We further note that evidence of similar acts perpetrated against the same victim are almost always admissible for those reasons. *Price v. Commonwealth,* Ky., 31 S.W.3d 885, 888 n. 4 (2000).

Accordingly, the opinion of the Court of Appeals and the judgment of conviction and sentence imposed by the Fayette Circuit Court are affirmed.

All concur.