# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: NOVEMBER 2, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000358-MR

DATE 11/27/17 Kim Redmon, DC

MICHAEL RAY DUNGAN                                                    APPELLANT


                    ON APPEAL FROM PULASKI CIRCUIT COURT
V.                      HONORABLE DAVID A. TAPP, JUDGE
                    NO. 15-CR-00018 AND NO. 16-CR-00081


COMMONWEALTH OF KENTUCKY                                              APPELLEE


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, VACATING IN PART AND REMANDING

Michael Ray Dungan was convicted of one count of third-degree rape,

KRS[1] 510.060; one count of incest, KRS 530.020; one count of abuse of an

adult, KRS 209.990; and three counts of first-degree persistent felony offender

("PFO1"). The trial court sentenced him to a total of twenty years'

imprisonment, and he now appeals as a matter of right. For the following

reasons, we affirm in part, vacate in part and remand for resentencing.

---

[1] Kentucky Revised Statutes.

## I. Background.

At his home on Saturday, November 2, 2013, Dungan sexually assaulted his 36-year-old stepdaughter, J.M., who is wheelchair-bound, moderately intellectually impaired, and physically disabled. At the time, Dungan was J.M.'s primary caretaker; he looked after her while his wife, Janie Dungan (J.M.'s biological mother), worked. J.M. has progressive cerebellar ataxia; her condition has gradually worsened throughout her life. She has a low IQ, attended special education classes while in school, and requires assistance using the restroom, taking baths, and eating.

On the day in question, J.M.'s aunt (Dungan's sister-in-law), Bobbie Jo Helton, arrived at the Dungan residence to borrow a movie. Bobbie Jo lives next door to the Dungans. At Dungan's trial, Bobbie Jo testified that no one answered when she knocked on the door, which she said was unusual. She knocked again and again no one answered. Bobbie Jo stated she then opened the door and hollered; still no one answered. Bobbie Joe entered the home and observed J.M slumped down in her wheelchair in Dungan's bedroom, where J.M. normally does not go. J.M. was turned sideways, facing the bed. Dungan emerged from the bedroom, pulling up his shorts. Bobbie Jo stated that neither he, nor J.M., said anything to her. Bobbie Jo turned and left.

Bobbie Jo contacted her niece (J.M.'s sister), Erin Wolf, about the incident; Erin reported it to J.M.'s mother, Janie, the next morning. When Dungan returned home from church that morning, Janie and Erin confronted him. Janie told Dungan, "You've done it again and you're leaving" and packed

2

up his clothing. Erin called the police. Dungan told Janie what had happened was her fault because she would not go to church with him. Janie replied that he was going back to jail, to which Dungan responded that he did not need jail, he needed therapy, because he was sick. Dungan then grabbed a knife and threatened to kill himself. About that time, the police arrived and arrested him.

Erin took J.M. to the hospital to be examined. A sexual assault kit was conducted; the external genital swab performed on J.M. was later confirmed to contain semen, and the Advanced Y-STR analysis of the external genital swab matched Dungan and his paternal relatives, making it 2,141 times more likely that the DNA came from Dungan or one of his male paternal relatives than from a random caucasian male. The only other two males in Dungan's family were his son and his nephew. Testimony at trial revealed that neither was in the area on or around November 2, 2013.

Later, Erin took J.M. to meet with a forensic investigator in Russell County. J.M. testified at trial that she recalled this interview and stated that she told the investigator the truth. However, J.M.'s trial testimony was inconsistent with what she had told the forensic investigator. At trial, J.M. testified that she remembered the police coming to her home and that afterwards Dungan did not live with them anymore. She testified that Dungan never touched her with his privates, nor had she ever seen his privates. She did not remember Bobbie Jo almost catching them right before he stopped living with them. She stated she remembered going with Erin to the forensic

3

investigator and that she told the investigator the truth, which was that Dungan had touched her. She was asked by defense counsel if she told the police that Dungan did not touch her, and J.M. said, "but he did."

Over defense's objection, the Commonwealth played portions of J.M.'s recorded interview with the forensic investigator. Because J.M.'s trial testimony was inconsistent with statements she had made to the forensic investigator, the Commonwealth sought to impeach her using the recorded interview. J.M. told the forensic investigator that Dungan had "put his thing in her" by putting her on the bed, standing up and pulling down his pants. He then "put his thing in her crotch" and told J.M. that he did not want her to get pregnant. J.M. said that Bobbie Jo almost caught them before the police came. J.M. explained that she did not want her dad to find out that she was talking and she did not want this to happen to anyone else. She knew what had happened was dirty, and was afraid that her parents would get divorced if people found out.

To elicit this testimony from J.M., the Commonwealth underwent a lengthy process of playing the question asked by the forensic investigator, pausing the video, asking J.M. if she was asked the question, and, when J.M. said no, playing her recorded answer. On cross-examination, defense asked J.M. if Dungan put his thing inside her, and she said it was between her legs because he was afraid she would get pregnant.

Also over defense's objection, Dungan's 1992 statement, wherein he admitted to sexually assaulting J.M., was admitted through Dom Acciardo, a

4

retired KSP trooper who investigated allegations of sexual misconduct involving Dungan in the early 1990's. At defense's request, the trial court admonished the jury to consider the statement only as it tends to prove, or disprove, lack of mistake, opportunity, common scheme or plan, motive, and state of mind.

Dungan testified in his defense, claiming that the semen found on J.M.'s genitals could have been transferred from the bedsheets where he and Janie had sex the night before. Dungan denied sexually assaulting J.M., and explained that because she had been complaining about her pants being on backward, he had come into the bedroom, stood her up, pulled her pants down, put her on the bed, pulled her pants off, slipped them back on, stood her up, and put her back in the wheelchair. He said he was in the process of folding laundry when he heard a knock on the door, and that his shorts got hung up on J.M.'s wheelchair as he passed by to answer the door. He explained that was the reason he was pulling up his pants when Bobbie Jo saw him.

The defense introduced evidence that at a prior plea colloquy in this case, to complete the plea, Dungan said "one thing led to another and he ejaculated on J.M." But because Dungan refused to admit to having sexual intercourse with J.M., the Commonwealth rescinded the plea offer. On the stand, Dungan also admitted to pleading guilty to sexual abuse involving J.M. in the 1990's. Dungan claimed he signed the 1992 statement to protect his family from the scrutiny of a trial.

5

At the close of the Commonwealth's case-in-chief and at the close of all the evidence, defense moved for a directed verdict on the third-degree rape and incest charges on grounds that no evidence of penetration had been presented. The Commonwealth responded that the jury could reasonably infer that when J.M. said Dungan "put his thing in her" that penetration had occurred. The Commonwealth further pointed out that the presence of Dungan's sperm on the external genital swab of J.M. was evidence of sexual contact, from which the jury could draw its own conclusions. The trial court denied Dungan's motions for a directed verdict, noting that any penetration, however slight, was sufficient. Defense also objected to the jury instruction with respect to abuse of an adult, and requested that a definition be included for "sexual abuse." The trial court overruled defense's objection and declined to define "sexual abuse."

Ultimately, the jury convicted Dungan of third-degree rape, incest, and abuse of an adult. During sentencing, the jury heard evidence that in 1994, Dungan pled guilty to two counts of third-degree rape, and received a 30-month prison sentence. In 2007, Dungan pled guilty to first-degree trafficking in a controlled substance (cocaine), firearm enhanced, and received a 15-year sentence. Dungan was on parole for this conviction in November 2013. Dungan testified that he was not guilty of any of these crimes. The jury found him guilty of PFO1, and recommended five years for rape, enhanced to 15 years by the PFO1 conviction; five years for incest, enhanced to 15 years; and ten years for abuse of an adult, enhanced to 15 years, for a total recommended

6

sentence of 45 years. The trial court sentenced Dungan to the maximum 20 years' imprisonment. On appeal, Dungan raises four claims of error.

## II. Issues on appeal.

### a. The convictions for third-degree rape and abuse of an adult subjected Dungan to double jeopardy.

Dungan argues that his convictions for third-degree rape and abuse of an adult violated the constitutional and statutory prohibition against double jeopardy. We review these two related issues in turn.

### i. Constitutional protections against double jeopardy.

Though Dungan failed to raise this issue before the trial court, "the constitutional protection against double jeopardy is not waived by failing to object at the trial level." *Kiper v. Commonwealth*, 399 S.W.3d 736, 740 (Ky. 2012) (internal quotations and citation omitted). Accordingly, Dungan's constitutional double jeopardy argument is properly before us.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits convicting or punishing a person twice for the same offense. It guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. V. Likewise, Section 13 of Kentucky's Constitution includes a virtually identical provision and affords similar protections as those guaranteed by the Fifth Amendment.

The jury convicted Dungan of third-degree rape and abuse of an adult under the following instructions:

> Instruction No. 5
> (Rape, Third-Degree)

7

You will find the Defendant, Michael Ray Dungan, guilty of Rape, Third-Degree, under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

A. That in this county, on or about November 2, 2013, and before the finding of the Indictment herein, he engaged in sexual intercourse with [J.M.]; AND

B. That at the time of such intercourse, [J.M.] was an individual with an intellectual disability.

Instruction No. 7
(Abuse of an Adult)
You will find the Defendant, Michael Ray Dungan, guilty of Abuse of an adult under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

A. That in this county, on or around November 2, 2013, and before the finding of the Indictment herein, he knowingly sexually abused [J.M.]; AND

B. That when he did so abuse [J.M.], she was eighteen (18) years of age or older, and because of her mental and physical dysfunctioning, she is unable to manage her own resources, carry out the activity of daily living, or protect herself form neglect, exploitation, or a hazardous or abusive situation without the assistance of others, and who may be in need of protective services.

To determine whether a violation of the constitutional double jeopardy provision occurred, we typically employ the *Blockburger* same-elements test: "whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?" *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996) (internal citation omitted) (adopting the test set forth in *Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). KRS 510.060 provides, in relevant part, "A

8

person is guilty of rape in the third degree when: (a) He or she engages in sexual intercourse with another person who is incapable of consent because he or she is an individual with an intellectual disability[.]" Rape in the third degree is a Class D felony. KRS 510.060. With respect to the abuse of an adult charge, KRS 209.990(2) provides, "A person who knowingly abuses or neglects an adult is guilty of a Class C felony."

Both third-degree rape and abuse of an adult require an element that the other does not. Third-degree rape requires sexual intercourse, which abuse of an adult does not. And abuse of an adult requires the element of knowing sexual abuse and neglect of a protected adult under KRS Chapter 209, as set forth in Instruction 7(B), which third-degree rape does not. Hence, convictions for both third-degree rape and abuse of an adult do not violate the *Blockburger* test.

### ii. Statutory double jeopardy.

However, Dungan's convictions for both charges are also subject to analysis under Kentucky's codification of the *Blockburger test*, KRS 505.020 *et seq. See Kiper*, 399 S.W.3d at 741 (while *Blockburger* test will most often be controlling analysis, it is not the exclusive method for evaluating potential double jeopardy violation). Since Dungan did not raise the issue of a statutory double jeopardy violation below, we will review his unpreserved claim for palpable error; that which affects the substantial rights of a party and results

9

in manifest injustice. RCr[2] 10.26. "Manifest injustice" authorizes review of unpreserved errors when "the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015) (citation omitted).

KRS 505.020 allows prosecution for multiple offenses arising from a single course of conduct, but "KRS 505.020(1)(c) does not permit such prosecution if the offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses." *Welborn v. Commonwealth*, 157 S.W.3d 608, 612 (Ky. 2005). This statutory restriction ensures that "a defendant may not be convicted of multiple crimes when there was but one course of conduct and a single *mens rea.*" *Kiper*, 399 S.W.3d at 743.

Dungan urges that the jury was presented with only one "act" of his penis being placed in or near J.M.'s crotch, and that single act was uninterrupted by legal process. He asserts that convicting him of rape and abuse of an adult is no different from convicting him of rape and sexual abuse, which this Court found violated double jeopardy in *Johnson v. Commonwealth*, 864 S.W.2d 266 (Ky. 1993). In that case, we observed that first-degree sexual abuse is a lesser-included offense of first-degree rape, and that the instruction

---

[2] Kentucky Rules of Criminal Procedure.

10

for sexual abuse, couched in general terms of "sexual contact" without differentiating the act from the act constituting rape, permitted the jury to find the defendant guilty twice of the same act, e.g., intercourse constituting rape and intercourse constituting sexual contact and, therefore, sexual abuse. *Id.* at 277.

Here, evidence was presented that Dungan "put his thing inside J.M.," "put his thing in her crotch," and "put it between her legs." Lab results from an external genital swab performed on J.M. revealed the presence of Dungan's semen. The jury instructions defined "sexual intercourse" as occurring "upon any penetration, however slight." The jury convicted Dungan of third-degree rape, which means it found from the evidence that Dungan penetrated J.M. The jury's guilty verdict on the sexual abuse of an adult charge reflects its finding that Dungan engaged in general sexual abuse, which may or may not have included penetration, since the term "sexual abuse" was not defined in the jury instructions. Since the instructions failed to differentiate the act of sexual abuse from the act constituting rape, the jury was essentially permitted to find Dungan guilty twice of the same act.

With respect to whether the act was "uninterrupted by legal process," the record is unclear as to the exact duration of the act, but showed that it occurred on one occasion on November 2, 2013. The Commonwealth has attempted to parse out discrete acts of Dungan's unbroken course of conduct toward the same victim, but no evidence was presented of any break in the sequence of events between Dungan penetrating J.M. and Dungan placing his

11

penis between her legs, if in fact both occurred. It appears to have been a single course of conduct. Therefore, under KRS 505.020(1)(c), Dungan could not be charged with both third-degree rape and abuse of an adult arising from the same course of conduct and directed at the same victim.

The remedy for a violation of double jeopardy is to maintain the more severe conviction and vacate the lesser offense. *Clark v. Commonwealth*, 267 S.W.3d 668, 678 (Ky. 2008). Thus, we vacate Dungan's conviction for third-degree rape (the lesser offense). His conviction for abuse of an adult stands. Due to our holding, and the terms of the final sentencing order, remand is appropriate. Pursuant to the final sentencing order, the trial court sentenced Dungan to 20 years' imprisonment: 5 years on third-degree rape (enhanced to 15 years by PFO1); 10 years for incest (enhanced to 15 years by PFO1); and 10 years for abuse of an adult (enhanced to 15 years by PFO1). The trial court ran the 15-year sentence for third-degree rape partially consecutive and partially concurrent to the 15-year sentence for incest, for a total of 20 years. The court ran the 15-year sentence for abuse of an adult concurrent with that 20-year sentence for a total of 20 years. The trial court's sentencing decision was unquestionably premised on Dungan's conviction and sentence for third-degree rape. Considering our ruling, justice requires that the trial court reconsider its final sentencing options under the circumstances as they evolve from further proceedings on remand.

### b. The Commonwealth's impeachment of J.M. was proper.

Dungan maintains that the Commonwealth's method of impeaching J.M. with her prior inconsistent statements to the forensic investigator was improper, since the Commonwealth failed to establish the necessary foundation. At trial, Dungan objected to the admission of J.M.'s statement to the forensic investigator on hearsay grounds. The trial court allowed the statement to come in under KRE[3] 613, which Dungan argued was prejudicial.

KRE 801A(a)(1) provides that "[a] statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is: (1) Inconsistent with the declarant's testimony[.]"

KRE 613(a) provides:

> (a) Examining witness concerning prior statement. Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it. The court may allow such evidence to be introduced when it is impossible to comply with this rule because of the absence at the trial or hearing of the witness sought to be contradicted, and when the court finds that the impeaching party has acted in good faith.

---

[3] Kentucky Rules of Evidence.

13

Once J.M.'s in-court testimony contradicted her statements to the forensic investigator, the Commonwealth asked her if she remembered her conversation with the investigator, which she stated she did. The Commonwealth played the tape of certain questions asked by the investigator, and asked J.M. if she remembered them. Then, the Commonwealth played her answers, and asked J.M. if she recalled answering as such. The Commonwealth asserts that in doing so, it laid the proper foundation for introducing J.M.'s prior inconsistent statements. The Commonwealth concedes the process was difficult, and J.M. was embarrassed and understandably confused, but asserts that it made a good faith effort to comply with typical impeachment procedures.

Dungan cites to *Noel v. Commonwealth*, 76 S.W.3d 923 (Ky. 2002), in support of his argument that strict compliance with the foundation requirements should have been enforced in this case. Noel involved a child victim who made an allegedly inconsistent statement to a family member, and this Court held that the family member could not testify as to that inconsistent statement because the child victim had not been asked whether she made the statement. *Id.* at 930. In other words, the Commonwealth in *Noel* failed to lay the foundation for impeachment using the prior inconsistent statement. Here, the Commonwealth established, through J.M.'s testimony, that she participated in the interview with the forensic investigator and laid the proper foundation for introducing her prior inconsistent statements.

Admittedly, the impeachment process was difficult, as one might expect in examining someone with an intellectual disability. Our review of the record, however, reveals that the Commonwealth made a good faith effort to comply with KRE 613 and laid a sufficient foundation to admit J.M.'s prior inconsistent statements. We find the portions of the video that were played were relevant to the issues at hand, and did not result in undue prejudice to Dungan so as to require reversal.

### c. Admission of evidence of Dungan's prior sexual assault of J.M. was proper.

Dungan claims the trial court abused its discretion by admitting his 1992 statement, wherein he admitted sexually abusing J.M. Before trial, the Commonwealth gave notice of its intent to introduce evidence of the 1992 statement and the resulting conviction. Dungan objected. The trial court admitted the 1992 statement, but admonished the jury that the statement was only to be considered for the limited purpose of proving lack of mistake, opportunity, common scheme or plan, or motive. The trial court prohibited the Commonwealth from introducing evidence of Dungan's resulting conviction for third-degree rape during the guilt phase. Dungan now maintains that under the KRE 403 balancing test, the probative value of the 1992 statement was outweighed by the prejudicial effect, and therefore the trial court abused its discretion by admitting it.

We review a trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). An abuse of discretion occurs if the trial court's ruling is "arbitrary, unreasonable,

15

unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

KRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith." However, such evidence is admissible if offered for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" In determining the admissibility of KRE 404(b) evidence, the court is to focus on three issues: (1) relevance, (2) probativeness, and (3) prejudice. *Harp v. Commonwealth,* 266 S.W.3d 813, 822 (Ky. 2008).

Clearly, Dungan's 1992 statement is relevant: he admitted committing a similar sexual act against the same victim. Specifically, in his statement Dungan admitted:

> This is what happened as J.M. was getting ready for
> bed she was naked and I may have touched her breast
> + back while getting her to bed. We both laid down
> together I though (sic) about doing something . . . I
> may have rolled over and put it (penis) between her
> legs but I didn't put my penis inside of her. I rubbed
> her vagina area with my fingers and put them inside of
> her. I think I have a problem officer and I need
> counciling (sic). We were in J.M.'s bedroom when this
> occurred, on Aug. 31, 1992.

This Court has held that "evidence of similar acts perpetrated against the same victim are almost always admissible[.]" *Harp,* 266 S.W.3d at 822. In the case at bar, evidence of Dungan's previous sexual assault of J.M. was relevant to disprove his defense that the semen discovered on J.M.'s genitals resulted from the transference of semen from his bedsheets to her labia. The statement

16

also tended to prove intent, opportunity, and absence of mistake or accident. While introduction of the statement was prejudicial to Dungan, that prejudice was substantially outweighed by its probative value.

Based on our review of the record, the Commonwealth gave proper notice of its intent to introduce evidence of Dungan's 1992 statement, the trial court did not abuse its discretion in admitting the evidence, and the jury was properly admonished as to how it should consider the evidence presented. Accordingly, no error occurred.

### d. The trial court properly refused to grant Dungan a directed verdict as to third-degree rape and incest.

At the close of the Commonwealth's case-in-chief and at the close of all the evidence, Dungan moved for a directed verdict on third-degree rape and incest, arguing that the Commonwealth failed to present any evidence of penetration. The trial court denied both motions. Dungan now claims the trial court's ruling was erroneous.

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). In assessing the weight of the evidence, courts are required to draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Id.* Courts must also be mindful that the credibility and weight to be given the testimony are questions for the jury exclusively. *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

17

Dungan was charged with the offense of third-degree rape, KRS 510.060, and incest, KRS 530.020, both of which require proof of "sexual intercourse." "Sexual intercourse occurs upon any penetration, however slight[.]" KRS 510.010(8). Circumstantial evidence can support a finding of penetration. *Jones v. Commonwealth*, 833 S.W.2d 839, 841 (Ky. 1992).

J.M. testified that Dungan put his penis in her "crotch," and she told the forensic investigator the same thing. The fact that Dungan's semen was only found on J.M.'s external genitals, and not inside her vagina, does not render the jury's finding of penetration unreasonable. As the Commonwealth points out, J.M.'s statement that Dungan "put it between her legs" supports a reasonable inference of penetration. J.M.'s testimony, combined with the discovery of Dungan's semen on her genitals more than supports an inference of penetration. Therefore, the trial court properly denied Dungan's motions for directed verdict. Moreover, because Dungan does not dispute that J.M. is his stepdaughter, the trial court also properly refused to grant a directed verdict on the incest charge.

### III.    Conclusion.

We vacate Dungan's conviction for third-degree rape, but affirm on all other grounds. This case is hereby remanded to the trial court to resentence Dungan considering our ruling.

All sitting. All concur.

18

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Megan K. George
Assistant Attorney General
Office of the Attorney General