Case 76.—PROSECUTION AGAINST W. R. FLETCHER FOR
RAPE.—Oct. 16.

## Fletcher v. Commonwealth.

## Appeal from Logan Circuit Court.

## W. P. Sandidge, Circuit Judge.

## Defendant convicted and appeals.   Affirmed.

1.  Criminal Law—Appeal—Change of Venue—Denial—Discretion
    —Review—The denial of accused's motion for a change of
    venue for prejudice of the inhabitants will not be reviewed
    on appeal unless a clear showing of abuse of the trial court's
    discretion appears.
2.  Same—Subsequent Application—The overruling of a motion
    for a change of venue is interlocutory only, and is subject
    to the control of the court at a subsequent term, so that, if
    events occurring after the hearing of the motion warrant the
    granting of a change, the court may in its discretion set aside
    an order denying the motion and grant the application not-
    withstanding Ky. St. 1903, Sec. 1118, providing that no more
    than one change of venue or application therefor shall be
    allowed to any person or the commonwealth in the same case.
3.  Same—Appeal—Indictment—Motion to Quash—Review—Under
    the express provisions of Cr. Code Prac. Sec. 281, the over-
    ruling of a motion to quash an indictment is not reviewable
    on appeal.
4.  Grand Jury—Witnesses—Examination—Interpreters — Where,
    in a prosecution for rape, both prosecutrix and her father
    were unable to speak English, and the jury did not under-
    stand their tongue, it was proper for the court to swear an
    interpreter and allow him to remain in the grand jury room
    while such witnesses were testifying and to give their testi-
    mony through such interpreter.
5.  Criminal Law—Evidence—Res Gestae—In a prosecution for
    rape, books and papers belonging to one of the parties ac-
    cused found on the ground after the commission of the of-
    fense were admissible as res gestae.

SIMS & GRIDER and S. R. CREWDSON for appellant.

### POINTS AND AUTHORITIES.

We earnestly complain of the following erorrs, among others, set forth in the motion and grounds for new trial, which we insist were prejudicial to the substantial rights of Appellant in his trial in the court below.

1. Errors of the court in refusing to grant defendant a change of venue on his application therefor made upon notice at the regular May term 1905 of the Logan Circuit Court, also in refusing to grant said change on renewal of his application therefor at the special August term, 1905, of said court, and in refusing to grant said change on renewal of his application at the regular September term 1905 of said court.

2. Error of the court in refusing to quash the indictment herein on defendant's motion and the evidence heard in support thereof.

3. Error of the court in giving instructions objected to by defendant and in refusing to give instructions asked by defendant, and in failing to give to the jury the whole law of the case.

4. Because the verdict of the jury is against the evidence.

5. Error of the court in permitting to go to the jury as competent testimony the declaration and acts of John Sacra, Guy and Jim Lyon, and a book and other papers purporting to belong to Guy Lyon and claimed to have been found on the next morning at the scene of the trouble, the defendant, Fletcher, not being shown to have been present when such delarations of said parties were made or acts done, no conspiracy being alleged in the indictment.

6. Error of the court in permitting over the objection of the defendant leading questions by the Commonwealth's Attorney to be asked the witnesses, Mary and Vincent Gladder, and their answers to be made thereto. Each and all of said errors being prejudicial to the substantial rights of Appellant.

### AUTHORITIES CITED.

Ky. Statutes, Sections 1109, 1110, 1118; Asher v. Beckner, 19 Ky. L. page 537; Johnson v. Commonwealth, 82 Ky. 116; Jett v. Commonwealth, 85 S. W., 1181; Bowman v. Commonwealth, 96 Ky., 8; Criminal Code Sections, 107,110.

N. B. HAYS and C. H. MORRIS FOR the Commonwealth. (No brief in the record.)

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

In May, 1905 Vincent Gladder, with his daughter, Mary Gladder, left Mitchell, Tenn., with the intention

of walking to Hopkinsville, and there taking the train to Milwaukee. Neither one of them could speak English. When they reached Russellville, they misunderstood the direction, not being able to speak English, and took the Greenville road. After going four or five miles from Russellville, they stopped and camped by the side of the road. Vincent Gladder and his daughter had come to this country form Austria in the month of September, 1904. He had been at Chicago, St. Louis, Little Rock, Chattanooga, and Mitchell, Tenn. He was a blacksmith by trade, but could not do much on account of being unable to speak or understand English. He was between 50 and 60 years of age, and had spent all the money he had when he reached this country, except something over $50. After they had stopped on the roadside and camped John Sacra and Jim Lyon came along the road and stopped. Mary Gladder was a stout girl 23 years of age. They were drinking, and offered Gladder and his daughter whisky. After staying a while they went on to the house of Jim Lyon. After supper Sacra went for W. R. Fletcher; Guy Lyon already being at Jim Lyon's house. Sacra was heard to say to Fletcher, "I want you to go with me to see a woman to-night." Fletcher said "All right." Fletcher had been to Russellville that day, and had come home in the evening intoxicated. The four went from Jim Lyon's house to where Gladder and his daughter were camping. As they went along they passed Woodson Mayhew and Frank Head, who were watching a tobacco bed to prevent the plants being stolen. Both Fletcher and Sacra took a pistol with them from Fletcher's place. As they went along one of them shot off his pistol; and another halloed, "Let her go, Bill." One of them asked, "Where are they at?" Another of the party answered they were camped at the pond. Hearing this, Head and Mayhew followed them at a distance. When they reached

the place where Gladder and his daughter were, they built up the fire. After they had done this, and drunk whisky around, one of them made a motion to somebody who was not in sight of Head and Mayhew, and then Vincent Gladder joined the circle at the fire, and the girl also. They offered Gladder and his daughter whisky, and also offered her money, which she refused. While they were standing there by the fire a man passed by in a buggy, but did not stop, paying no attention to what was going on, and only seeing the parties standing around the fire. Soon after this Sacra and Guy Lyon seized the girl and were dragging her off from the fire, when her father interposed. Fletcher and Jim Lyon thereupon presented a pistol at him, and forced him to stand still. They had been waving and shooting off their pistols around the fire. After Guy Lyon and Sacra dragged the girl off into the bushes Head and Mayhew came up to the fire, and Head went on to where Sacra and Guy Lyon had the girl down. Guy Lyon was holding the girl, while Sacra was getting upon her person to ravish her, and she was struggling and crying. Head remonstrated with them, and one of them pointed a pistol at him. Finding that they could do nothing, Head and Mayhew left. After they left the girl was ravished in turn by each of the four. Head and Mayhew toward morning got some of their neighbors to come with them, and returned to the scene. All the parties had then left. They found at the fire some articles of woman's attire, also a valise near by, and at the place where the girl was ravished the ground was torn up, showing signs of a struggle. There they found a memorandum book and some papers belonging to Guy Lyon, also the top of a razor case. The girl and her father, wandering around in the dark, finally early in the morning made their way to Russellville, and warrants were issued for the arrest of the four. We have omitted the sickening

details of the outrage, and have only given a brief statement of the occurrence.

The circuit court was in session. The defendants were indicted and arrested that day, and were sent for safekeeping by way of Franklin to Bowling Green. On May 25th the cases were set for trial on the 31st. On the 31st the defendants entered a motion for a change of venue, which was overruled. They also entered a motion for a continuance. This motion was sustained, and the case was continued. At a special term held in July they entered a motion to quash the indictment. This motion was overruled. Sacra was tried at that term, but Fletcher was not tried until a special term held in August. He was then tried by a jury from Todd county, which failed to agree. At the September term he was tried again by a jury from Simpson county, which found him guilty as charged, and fixed his punishment at death. Fletcher on the trial testified that while they were standing around the fire Sacra was talking privately to the girl for a while, and finally she and Sacra went off into the bushes together voluntarily, and that he soon after this went home. On the other hand, he stated to a number of persons when the thing happened and for some time afterwards that he was at Jim Lyon's all night, and was not up on the road at all. The girl's hands were bruised. There were bruises on her face and neck. She walked unnaturally, or with a shuffle. The ground also confirmed most pathetically the story told by her, her father, by Head, and by Mayhew.

It is insisted that the court erred in refusing to change the venue, in refusing to quash the indictment, in admitting evidence, and in instructing the jury. The rule is that this court will not disturb the conclusion of the circuit judge in refusing a change of venue unless he has abused his discretion under the evidence. The evidence heard by the circuit

judge was very conflicting. It showed that there was considerable feeling in Russellville and in that part of the county against the crime, but there was no disposition to assume that the defendants were guilty. They were at home among their neighbors, friends and acquaintances. Galdder and his daughter were but tramps passing through the county. They were without power or influence. The weight of the evidence heard by the circuit court tended to show that the people of the county, though at first considerably excited, had settled down to the conclusion that the law should take its course, and that there was a large per cent. of the county who had heard nothing of the facts of the case, and had no opinion about it. At the term at which he was tried the defendant filed a second motion for a change of venue, based upon the fact that in July a mob had broken into the jail and shot at Sacra as he fled from the jail, also upon the further fact that, when the jury failed to agree in August on his trial, the 11 who favored conviction were made much of by certain citizens of Russellville, while the one who had caused the jury to disagree was treated slightingly. Section 1118, Ky. St. 1903, provides that "not more than one change of venue or application therefor shall be allowed to any person or the Commonwealth in the same case." But the order overruling a motion for a change of venue is only interlocutory, and is subject to the control of the court at a subsequent term. If events happening since the hearing of the motion in the judgment of the court are sufficient to show that a change of venue should be granted, he may in his discretion set aside the order overruling the motion and sustain the application. It is a matter addressed to the sound discretion of the court, and his discretion will not be reviewed in such a matter unless abused. In the case at bar the defendant was tried at the subsequent term by a jury from another county. The court, to secure

the appellant a fair trial, not only continued the case until the excitement had died down, but he summoned a jury first from Todd and then from Simpson county; the final trial not being had for something like five months after the crime was committed. We see no possible reason for concluding that a jury brought from a distant county, and not permitted to separate or speak to·any one after they were sworn, would not give the defendant as fair a trial at Russellville, where he could as conveniently produce all of his witnesses as anywhere in the State.

Under the Criminal Code of Practice, § 281, we have no power to review the action of the circuit court in overruling the motion to squash the indictment, but we deem it proper to say that as neither Mary Gladder nor her father could speak English, and the grand jury did not understand German, the court did right in swearing an interpreter, and allowing him to remain in the grand jury room while they were testifying. There would be no other possible way of getting their testimony to the grand jury. The interpreter was a mere conduit by which the testimony of the witnesses was conveyed to the grand jury. Where the witness is dumb, or for any reason cannot communicate directly to the grand jury, another person may be used under oath to express to the grand jury what the witness testifies. 1 Greenleaf on Evidence, § 439d-e; Bishop's New Criminal Procedure, § 861; Criminal Code of Practice, § 158. There is no evidence in the record that the grand jury received any evidence except that which was sworn to before them.

The evidence as to the books and papers found on the ground was competent. Whatever the scene of the transaction showed might be proved as res gestae. The court did not abuse a sound discretion in his rulings on the questions allowed to be asked Vincent and Mary Gladder. The instructions were very few and

simple. They correctly set out the law of the case. Upon the whole case, we do not see that any substan-. tial right of appellant was prejudiced.

Judgment affirmed.