Jose **LOPEZ**, Appellant

v.

**COMMONWEALTH of Kentucky,**
**Appellee**

2013–SC–000795–MR

Supreme Court of Kentucky.

RENDERED: MAY 14, 2015

COUNSEL FOR APPELLANT: Jason Apollo Hart, Department of Public Advocacy

COUNSEL FOR APPELLEE: Jack Conway, Attorney General, Jeanne Deborah Anderson, Assistant Attorney General

OPINION OF THE COURT BY JUSTICE KELLER

A Barren County Circuit Court jury convicted Jose Lopez (Lopez) of: first-degree unlawful transaction with a minor, third degree rape, incest, and first-degree sexual abuse. The parties subsequently agreed that the convictions for rape and sexual abuse violated Lopez's right to be free from being placed in jeopardy twice for the same criminal activity and dismissed those convictions. The trial court, for reasons discussed below, sentenced Lopez to a total of forty (40) years' imprisonment on the remaining two convictions.

Lopez appeals as a matter of right under Ky. Const. § 110(2)(b) arguing that the trial court committed reversible error: (1) by admitting into evidence Lopez's statement to a detective that was translated by a non-certified translator; (2) by admitting into evidence Lopez's statement and the detective's testimony regarding that statement; (3) by prematurely taking the sentencing determination away from the jury; and (4) by denying Lopez's motion to exclude KRE 404(b) prior bad acts evidence. Having reviewed the record and the parties' arguments, we affirm.

## I. BACKGROUND.

Lopez, who was born in Honduras, traveled to the United States illegally where he married Johanna Lopez (Mrs. Lopez). Mrs. Lopez had a daughter from a previous relationship, Jane,[1] and the couple had three children of their own. The family resided in New York prior to moving to Glasgow, Kentucky in May 2010, where they lived until May 2011, when they moved to Pennsylvania.

Mrs. Lopez testified that in February 2012, while the family was living in Pennsylvania, Lopez and Jane admitted they had been having a sexual relationship for several years. The sexual conduct began in New York when Jane was twelve or thirteen and continued while the family lived in Kentucky in 2010–2011, when Jane was fifteen. After learning of the relationship, Mrs. Lopez and the children returned to Glasgow, Kentucky, without Lopez, who returned to New York.

After returning to Kentucky, Mrs. Lopez came into contact with Kentucky State Police Detective Tim Adams (Detective Adams), who investigated her allegations of rape and sexual abuse regarding her daughter. At the urging of Detective Adams, Mrs. Lopez recorded several phone conversations she had with Lopez, during which Lopez admitted that he had sex with Jane multiple times.

Based on the preceding, Lopez was arrested and extradited to Kentucky where Detective Adams and a translator, Eddie F. Melgar,[2] conducted a recorded interview. Melgar testified at trial that Detective Adams read Lopez his *Miranda*[3] rights, which Melgar translated for Lopez. Melgar also testified about his experience as an interpreter; that Lopez understood and waived his *Miranda* rights; that he believed Lopez answered questions voluntarily; and that his translations were true and accurate. Melgar did not testify regarding the contents of Lopez's statement; however, Detective Adams testified that, based on Melgar's translations, Lopez had admitted to having sex with Jane. Furthermore, over Lopez's objection, the Commonwealth played his recorded statement for the jury.

Based on the preceding, as well as testimony from Jane, the jury convicted Lopez as set forth above. During penalty phase deliberations, and before the parties agreed to dismiss the convictions, the jury was able to reach a verdict on the third-degree rape and first-degree sexual abuse charges; however, after approximately one hour of deliberations, the jurors indicated they could not reach a verdict on the sentences for the remaining two convictions. Pursuant to the Kentucky Rule of Criminal Procedure (RCr) 9.84 and Kentucky Revised Statute (KRS) 532.055(4) the court

---

1. We have chosen a pseudonym to protect the identity of the victim.

2. Melgar is a Spanish-speaking interpreter born in El Salvador and employed as a trans-

lator by the T.J. Sampson Hospital in Glasgow.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

then rendered sentences of twenty years' imprisonment each on the unlawful transaction with a minor and incest convictions, with the sentences to run consecutively for a total of forty years. We set forth additional facts as necessary below.

## II. STANDARD OF REVIEW.

Because Lopez's arguments are reviewed under differing standards, we set forth said standards separately below.

## III. ANALYSIS.

### A. Admission of the Testimony of Detective Adams and of Lopez's Statement Was Not Error.

After Melgar testified, Lopez moved to suppress his recorded statement, which contained Melgar's translations, because Melgar was not a court-certified interpreter. The trial court denied Melgar's motion and Lopez continues to argue that his statement should have been suppressed because of Melgar's lack of certification.

■ Review of a trial court's ruling on a motion to suppress is a two-step process. We first must determine if the trial court's factual findings are supported by substantial evidence. If they are, then those findings are conclusive. RCr 9.78. We then must determine if the trial court properly applied the law to its factual findings, which we do *de novo. Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998).

As we understand it, Lopez's argument regarding his statement is twofold: (1) it should not have been admitted because Melgar was not properly qualified as an expert witness under the Kentucky Rules of Evidence (KRE); and (2) it should not have been admitted because Melgar was not a court-certified translator as set forth in KRS 30A.400 *et seq.* His argument regarding Detective Adams's testimony is that it was based on inadmissible hearsay.

We address each argument separately below.

### 1. Melgar Was Qualified Under the Kentucky Rules of Evidence.

■ Initially, we note that the requirements to qualify as an interpreter under the Kentucky Rules of Evidence differ from the requirements to qualify as an interpreter under KRS 30A.400 *et seq.* Furthermore, we note that Lopez challenged Melgar's interpretation based on his failure to obtain certification as an interpreter under KRS 30A.400 *et seq.,* not on Melgar's failure to qualify as an interpreter under KRE 604. Therefore, it is doubtful that Lopez preserved his argument with regard to KRE 604; nonetheless, we address the issue.

KRE 604 states: "An interpreter is subject to the provisions of these rules relating to qualifications of an expert...." A person who has the requisite "knowledge, skill, experience, training, or education may testify" as an expert. KRE 702. Melgar testified that he is from El Salvador, that Spanish is his native language, and that he had acted as a Spanish language interpreter at T.J. Sampson Hospital for two years. Had the trial court been asked to make a ruling under KRE 604, that testimony would have been sufficient to support admission of Melgar's translations. We recognize Lopez's argument that Melgar had never interpreted in a criminal setting before and that Lopez, who is from Honduras, speaks Spanish with a different dialect. However, those factors go to the weight to be given to Melgar's interpretations, not to their admissibility under KRE 604.

■ Finally on this issue, we note that both Lopez and the Commonwealth make reference to the necessity for the trial court to hold a *Daubert* hearing. The

purpose of a *Daubert* hearing is to determine if the opinions being offered by an expert are admissible. As the Commonwealth notes, Melgar did not offer expert opinions as contemplated by KRE 702, rather he simply offered a translation of Lopez's statement. Furthermore, the factors a court is to consider when undertaking a *Daubert* analysis—were there sufficient facts and data; were reliable principles and methods used; and were the principles and methods reliably applied to the facts—would not be relevant in determining whether a person is qualified to interpret. Therefore, Lopez was not required to request a *Daubert* hearing in order to preserve an objection to Melgar's qualifications under KRE 604, and the court was not required to hold one.

## 2. Whether Melgar Was a Court–Certified Interpreter Is Irrelevant Because Lopez Has Failed to Show How Melgar's Interpretation Caused Him Any Harm.

■ It is undisputed that Melgar is not a court-certified interpreter under KRS 30A.400 *et seq.* Lopez argues that Melgar's lack of certification should have barred introduction of Lopez's statement, which contained Melgar's interpretations. As noted by Lopez, KRS 30A.400(2) provides that a statement made by a person entitled to an interpreter shall "only be admissible if the statement was made, offered, or elicited in the presence of a qualified interpreter." Lopez's argument and the statutory language raise a number of issues, including what qualifications are necessary for an interpreter and whether the legislature can determine what evidence is admissible.[4] However, we need not address those issues because Lopez has failed to show how admission of his statement, even if it was error, was anything more than harmless error.

■ "A non-constitutional evidentiary error may be deemed harmless ... if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688–89 (Ky.2009). In making that determination, the question is not "whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos v. United States*, 328 U.S. 750, 756, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Here, the evidence of Lopez's guilt, even without his statement, was overwhelming. He and Jane both admitted to Mrs. Lopez that they had a sexual relationship. Jane testified at trial regarding the sexual nature of their relationship; and Lopez confessed to Mrs. Lopez in recorded telephone conversations. Furthermore, Lopez has not pointed out any translation errors that Melgar may have made. Thus, even if admission of Lopez's statement was error, Lopez has failed to establish that exclusion of the statement would have had a substantial influence on or would have swayed the jury's judgment.

## 3. Melgar's Interpretation of Lopez's Statement Was Not Hearsay.

■ During trial, Detective Adams testified that Lopez confessed and the

4. We note that the statutory provision indicating a statement is only admissible under certain circumstances may violate the Constitutional separation of powers doctrine. *See Manns v. Com.*, 80 S.W.3d 439, 445 (Ky. 2002), as modified (Aug. 22, 2002). However, neither party raised this issue and, because we have determined that any error was harmless, we do not address it.

Commonwealth played Lopez's statement to the jury. As we understand it, Lopez is now arguing that Detective Adams's testimony was inadmissible hearsay because, as a non-Spanish speaking person, he did not have personal knowledge of what Lopez said but was relying on Melgar's translation. The Commonwealth argues that Detective Adams's testimony falls within an exception to the hearsay rule. We agree with the Commonwealth.

"The standard of review of an evidentiary ruling is abuse of discretion. The test for an abuse of discretion 'is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.' This Court will not disturb the trial court's decision to admit evidence absent an abuse of discretion."

*Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky.2007) (footnotes omitted).

Hearsay, which is generally inadmissible, "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." KRE 801. However, pursuant to KRE 801(A)(b): "A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is . . . [t]he party's own statement, in either an individual or a representative capacity." But for the need for an interpreter, Lopez's statement fits squarely within KRE 801(A)(b) as an admission by a party opponent, making Detective Adams's testimony clearly admissible. The question before us is whether the use of an interpreter alters the nature of Lopez's statement. We hold that it does not.

■ At the outset, we note that the parties have not cited any Kentucky law directly on point. However, the Commonwealth cites to a persuasive case from 1906 that involved the use of an interpreter during grand jury proceedings. In *Fletcher v. Commonwealth,* 123 Ky. 571, 96 S.W. 855, 857 (1906), the Court held that an interpreter was a "mere conduit by which the testimony of the witnesses was conveyed to the grand jury." Although the issue herein does not involve the grand jury, we find the Court's holding in *Fletcher* to be analogous. When an interpreter is simply translating what a witness says, then the interpreter is acting merely as a conduit and, if the non-English speaking declarant's testimony would otherwise be admissible, the use of an interpreter to translate that testimony does not render it inadmissible. If Lopez had been speaking English, his statement would be admissible as an admission by a party. The mere fact that Lopez's statement was made in Spanish, then translated into English, does not make it any less of an admission.

We recognize that in certain circumstances the trial court may be justified in excluding testimony based on a translated statement, such as when the translation is inaccurate or misleading. However, as noted above, Lopez has not alleged that Melgar's translation was either inaccurate or misleading. Therefore, the trial court did not abuse its discretion when it admitted Detective Adams's testimony.

**B. The Trial Court's Decision to Declare the Jury Deadlocked During the Sentencing Phase Was Not Palpable Error.**

■ As noted above, the jurors indicated after approximately one hour of deliberations that they were having difficulty reaching a verdict as to the appropriate length of the sentences for Lopez's convictions of first degree unlawful transaction with a minor and incest. However, they indicated that they had agreed that any such sentences should run concurrently.

The trial court asked the foreperson whether the jury, with additional deliberation, could return full sentences or if the jurors were "hopelessly deadlocked." The foreperson stated, "Honestly your honor, I don't think it can be reached, I think that this is, just strong views each way." The parties discussed an instruction to the jury pursuant to *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) and RCr 9.57, but the trial court decided the jury was deadlocked and it would render the sentences in the absence of a jury verdict. Lopez asked the court to impose concurrent "medium range sentences" while the Commonwealth argued for consecutive maximum sentences. The trial court imposed maximum sentences of twenty years' imprisonment for each crime, with the sentences to run consecutively for a total of forty years.

Lopez admits this issue is unpreserved and therefore may only be reviewed for palpable error under RCr 10.26. A palpable error "affects the substantial rights of a party ... and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." *Id.*

RCr 9.84 states that, when a jury renders a guilty verdict, "it shall fix the degree of the offense and the penalty except that the court may fix the penalty (a) in cases where the penalty is fixed by law and (b) in cases where the court is otherwise authorized by law to fix the penalty." KRS 532.055 states that sentences in felony cases are to be affixed by a jury. When a jury is unable to agree as to a sentence, the jury should report as much to the judge. Then "the trial judge shall impose the sentences within the range provided elsewhere by law." KRS 532.055(4). Determining when a jury is unable to reach a verdict is left to the sound discretion of the trial judge. *See* RCr 9.57.

The cases cited by Lopez in support of his argument are distinguishable because they involved the appropriateness of the court requiring the jury to continue deliberations once the jurors have indicated they are actually or are potentially deadlocked. This Court has held that requiring the jury to continue deliberations under those conditions is an acceptable practice and within the discretion of the trial court. However, that is not what occurred here. Here, once the foreman announced the jury was likely deadlocked, the trial court discontinued deliberations. Lopez has not cited to any cases wherein this Court has held that a trial court abused its discretion by doing what the court did herein.

Furthermore, having reviewed the record, we discern no such abuse of discretion here. The jury foreperson did not state that the jury was deadlocked but she did indicate that she did not believe additional deliberations would prove useful. As Lopez argues, the jury may have been able to reach a full verdict with more deliberations. However, it is just as likely that the jury would not have done so. Therefore, we cannot say that the trial court abused its discretion by accepting the foreperson's assessment and declaring the jury deadlocked.

## C. The Admission of the KRE 404(b) Prior Bad Acts Evidence Was Not Error.

 We review a trial court's decision to admit prior bad acts evidence for an abuse of discretion. *Commonwealth v. King*, 950 S.W.2d 807, 809 (Ky.1997). A court abuses its discretion if its decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky.2007).

Prior to trial the Commonwealth filed notice that, pursuant to KRE 404(b), it would present evidence that Lopez and Jane engaged in sexual intercourse and anal and oral sodomy in New York, before the family came to Kentucky in 2010, and in Pennsylvania, after the family left Kentucky in 2011. Lopez objected, arguing the Commonwealth's only intent was to prove his bad character. The trial court found that evidence of how the sexual contact between Lopez and Jane began and how it continued was "inextricably intertwined with the other evidence essential to the case." Therefore, the court permitted the Commonwealth to offer, in detail, evidence regarding the "initial encounter," and evidence "in summary form" of ongoing conduct. Furthermore, because Lopez was charged with rape, the court held that the Commonwealth could present more detailed evidence regarding forcible compulsion. However, the court excluded any evidence of sodomy because Lopez had not been charged with sodomy in Kentucky.

Consistent with the court's ruling, Jane and Mrs. Lopez testified about sexual conduct that occurred in New York and Pennsylvania. However, contrary to the court's order, Jane also testified about sodomy.

Lopez argues that the court erred by admitting the KRE 404(b) evidence because its only purpose was to prove he was of bad character and that he acted in conformity therewith. The Commonwealth argues that the evidence was admissible to prove a continuous course of conduct and to present "the whole story" to the jury. In the alternative, the Commonwealth argues any error was harmless.

■ KRE 404(b)(1) states that "evidence of other crimes, wrongs, or acts is not admissible" unless offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Such evidence is also admissible "[i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2). Furthermore, "evidence of similar acts perpetrated against the same victim are [sic] almost always admissible" to prove intent, plan, or absence of mistake or accident. *Noel v. Commonwealth,* 76 S.W.3d 923, 931 (Ky.2002).

■ The testimony from Jane and Mrs. Lopez about sexual conduct between Jane and Lopez that occurred before they came to and after they left Kentucky, falls squarely within the parameters set forth in *Noel.* Therefore, it was admissible under KRE 404(b)(1). We recognize that the trial court admitted the evidence using the standard in KRE 404(b)(2); however, we will not reverse a correct evidentiary decision by the trial judge because it was made "for the wrong reason." *Noel,* 76 S.W.3d at 931. Therefore, we discern no error in the admission of evidence of sexual activity that preceded and post-dated the time Jane and Lopez resided in Kentucky.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the trial court.

All sitting. All concur.