# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: JANUARY 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0301-MR

DURRELL DAVIS                                                 APPELLANT

V.                 ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN LAPE, JUDGE
NO. 21-CR-01403

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Durrell Davis was indicted on charges of sodomy in the first degree, victim under 12, and sexual abuse in the first degree, victim under 12, relative to conduct allegedly perpetrated against his girlfriend's minor daughter. Both charges were alleged to have occurred in a continuing course of conduct[1] over a four-and-a-half-year period. Following a jury trial, Davis was convicted and received a life sentence. He now appeals as a matter of right.[2] We affirm.

---

[1] Kentucky Revised Statutes (KRS) 501.100(2) ("A person may be charged with committing an offense against a vulnerable victim in a continuing course of conduct if the unlawful act was committed against the same person two (2) or more times over a specified period of time."). It is undisputed that each of the crimes charged qualified as an "offense against a vulnerable victim" as that term is defined in KRS 501.100(1).

[2] KY. CONST. §110(2)(b).

**FACTS AND PROCEDURAL HISTORY**

In late 2018, after a presentation on body safety and inappropriate touching at her elementary school, Nicole[3] reported to her second-grade teacher that Davis had touched her in her "bathing suit area."[4] The teacher alerted the appropriate authorities and an investigation into potential sexual abuse was initiated. The investigation revealed Davis had previously been involved in a sexual relationship with Nicole's mother, DeeDee, and would often stay overnight at DeeDee's apartment in Covington, Kentucky. Nicole disclosed that Davis abused her when she was between three and five years of age. She stated Davis would remove her clothes and touch her private parts with his hands, mouth, and penis. The abuse occurred on two or three occasions and Davis warned her not to tell anyone what had happened.

During a voluntary interview with police on March 15, 2019, Davis stated he was a father-figure to Nicole and considered her his "starter-daughter" although they were not biologically related. In response to the allegations against him, he told investigators Nicole was a hypersexualized child who was "thirsty" for knowledge about sex. She would often enter the room while he and DeeDee were engaging in sexual relations, and she repeatedly tried to touch and kiss his genitals. Davis said Nicole would often awaken him by "grinding" on him or sitting on his face. He indicated that on one occasion,

---

[3] In accordance with Kentucky Rules of Appellate Procedure (RAP) 7(B), we refer to the juvenile victim by a pseudonym to protect her privacy.

[4] The presentation apparently used this term to refer to a child's private parts.

Nicole masturbated him almost to the point of ejaculation before he awoke sufficiently to stop the contact. Davis admitted to having dreams of having sex with Nicole. He claimed to have told DeeDee about Nicole's inappropriate conduct, but she seemed unconcerned. Davis stated he left his relationship with DeeDee when Nicole was three or four and had no contact with them after about 2015 when he moved to Cincinnati, Ohio.

Sometime after the interview, Davis contacted several of his family members and made incriminating statements. After the phone calls, Davis, his mother, brother, and sister had a family meeting where Davis made more horrific and damning admissions. He told his relatives Nicole was like "crack cocaine" to him, he "had to have her," and that he "loved the way [she] tasted." He said he "had never been so hard in his life" and that Nicole "brought out the monster" in him. Davis indicated Nicole was coming on to him and he was just giving her what she wanted. When pressed on how often things happened between the two, he stated "10, 50, 80, 100, I don't know how many times."

A jury convicted Davis of sodomy in the first degree and sexual abuse in the first degree. He received a life sentence for the sodomy conviction and a concurrent five-year sentence for the sexual abuse conviction. This appeal followed.

## ANALYSIS

Davis now raises six allegations of error in seeking reversal. First, he contends the continuing course of conduct language in the instructions violated the rule laid down in *Ramos v. Louisiana*, 590 U.S. ___, 140 S.Ct. 1390

(2020). Second, and closely related to his first argument, he asserts the jury instructions contained double jeopardy and unanimity violations. Next, Davis argues the trial court failed to find a compelling need before permitting Nicole to testify out of his line of sight. Fourth, Davis contends the trial court erroneously permitted the Commonwealth to introduce improper KRE[5] 404(b) evidence against him. Davis next alleges the trial court prevented him from putting forward a defense when it limited his cross-examination of a police detective. Finally, he contends two police detectives were improperly permitted to give irrelevant testimony during the penalty phase of the trial.

Several of the arguments raised on appeal were admittedly not preserved for appellate review. To the extent his arguments are unpreserved, Davis requests palpable error review pursuant to RCr[6] 10.26. Although not properly preserved, a palpable error "affects the substantial rights of a party" and "relief may be granted upon a determination that manifest injustice has resulted" from the error. RCr 10.26. To obtain a reversal based on an alleged palpable error, a defendant must show such error was "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006). "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id.* at 5.

---

[5] Kentucky Rules of Evidence.

[6] Kentucky Rules of Criminal Procedure.

4

## I. No *Ramos* violation occurred

Davis first argues the continuous course of conduct language in the instructions violated *Ramos* and his right to a unanimous verdict. This issue was admittedly not raised before the trial court and is unpreserved. We will therefore review only for palpable error.

In *Ramos*, the United States Supreme Court simply held the Sixth Amendment right to a unanimous verdict in criminal matters applies to the states through the Fourteenth Amendment. 140 S.Ct. at 1397. Louisiana and Oregon were the only two states directly affected by the ruling as those states allowed for a conviction on a finding of guilt by ten jurors. *Id.* at 1394. *Ramos* had no practical impact in the Commonwealth because "Kentucky has long required criminal convictions by a unanimous jury verdict." *Capstraw v. Commonwealth*, 641 S.W.3d 148, 158 (Ky. 2022). *See also Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978) ("Section 7 of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve persons in all criminal cases[]"); KRS 29A.280(3) ("A unanimous verdict is required in all criminal trials by jury"); RCr 9.82(1) ("The verdict shall be unanimous. It shall be returned by the jury in open court[]").

Nevertheless, Davis asserts inclusion in the jury instructions of the continuing course of conduct language of KRS 501.100 violated *Ramos* and created a unanimity issue. Although his argument is underdeveloped and

5

based primarily on speculation, supposition, and belief,[7] it is clear that Davis seeks an expansive reading of the *Ramos* holding to cover a situation neither contemplated nor ruled upon by the Supreme Court. While unanimity was generally addressed, that opinion plainly does not reach the type of issue raised herein. Davis raises no challenge to the validity of KRS 501.100 and there is nothing in the record to indicate less than all twelve jurors voted for a finding of guilt. Under the facts presented, *Ramos* is inapplicable in this matter, and we decline Davis's invitation to expand it beyond its clear and narrow holding. There was no error, and certainly no palpable error.

## II. The instructions did not violate unanimity or double jeopardy

Second, and closely related to his first argument, Davis contends the instructions presented unanimity and double jeopardy violations as they did not sufficiently differentiate between the acts identified as sodomy from the acts identified as sexual abuse. He asserts the language in the instructions made it possible for the jury to rely on the same conduct to convict him of the two separate charged offenses. Davis acknowledges his challenges are unpreserved and requests palpable error review. As an unpreserved alleged error, absent a finding that manifest injustice resulted, no palpable error will be deemed to have occurred. *See Sexton v. Commonwealth*, 647 S.W.3d 227,

---

[7] Davis contends the verdict in his case did not reflect the "conscience of the community" but rather "the passions of a subset of the jury" which occurred "in the already pressurized environment" surrounding child sex cases. He baldly asserts that because the jury deliberated his guilt for just over an hour, there can be no certainty of unanimity in their decision.

232 (Ky. 2022) (holding that "reversal is not the universal, essential result of a unanimous verdict error. Where manifest injustice will not result, this Court can find no palpable error"). "In all cases presenting an unpreserved error regarding a unanimous jury, the courts must 'plumb the depths of the proceeding' and scrutinize the factual idiosyncrasies of the individual case. That includes a consideration of the weight of the evidence." *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023) (quoting *Martin*, 207 S.W.3d at 4).

Davis presents a challenge based on what he characterizes as a "multiple-acts" unanimous-verdict violation as described in *Martin v. Commonwealth*, 456 S.W.3d 1, 6 (Ky. 2015). Further, he asserts the evidence permitted the jury to convict him of two crimes based on the same act, thereby resulting in a double jeopardy violation. He contends the sexual abuse instruction merely required the jury to find he engaged in sexual contact with Nicole without specifying what body parts were used to perpetrate the crime or what act or acts would qualify as sexual contact. In his estimation, if the jury were to conclude his act of touching Nicole's vagina with his mouth constituted deviate sexual intercourse sufficient to convict him of sodomy, it would automatically also have to conclude he subjected Nicole to sexual contact. In short, he contends one cannot engage in deviate sexual intercourse without also engaging in sexual contact and thus the instructions were infirm as it cannot be said with certainty that the jurors did not use the same conduct to convict him of two separate crimes. His arguments are without merit.

7

The evidence adduced at trial revealed multiple instances of sexual abuse comprised of two distinct categories of acts: oral sex and rubbing/touching of genitals with hands. The instructions made clear that deviate sexual intercourse required for a finding of guilt on the charge of sodomy related to the sex organs of one person and the mouth of the other and the sexual contact required for sexual abuse involved the touching of the sexual or intimate parts of another for the purpose of sexual gratification. There were two separate and discrete criminal acts which were each supported by substantial testimony.

> First-degree sexual abuse is properly classified as a lesser included offense of first-degree sodomy. *Johnson v. Commonwealth,* 864 S.W.2d 266, 277 (Ky. 1993). The distinction between the two offenses is the body part touched for purposes of sexual gratification. Sexual abuse requires "sexual contact," KRS 510.110, which means "touching of the sexual or other intimate parts of a person," KRS 510.010(7). Sodomy, on the other hand, requires "deviate sexual intercourse," KRS 510.070, which means "any act of sexual gratification involving the sex organs of one (1) person and the mouth or anus of another," KRS 510.010(1). The additional element in a sodomy offense is the specific sexual or intimate parts involved, namely, the mouth or anus.

*Mash v. Commonwealth,* 376 S.W.3d 548, 559 (Ky. 2012). Thus, whether Davis's convictions for sodomy and sexual abuse violate double jeopardy depends on whether the sexual abuse was incidental to and thus subsumed by the sodomy or was instead a separate criminal act. *See Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky. 1996) (adopting the test set forth in *Blockburger v. U.S.,* 284 U.S. 299, 304 (1932)).

The acts of Davis touching Nicole's vagina with his hands and Nicole grabbing Davis's genitals and masturbating him were wholly unrelated to and independent of the oral sodomy Davis inflicted on Nicole. The separate charge of sexual abuse here was not based on contact related to the oral sodomies, but on separate acts of sexual gratification. *See Benet v. Commonwealth*, 253 S.W.3d 528, 536 (Ky. 2008); *Hampton v. Commonwealth*, 666 S.W.2d 737, 739-40 (Ky. 1984). There was no double jeopardy violation.

Further, the instructions sufficiently differentiated the criminal acts necessary for a finding of guilt under each. This is simply not the type of unanimity violation described in *Martin*. There was no error, and certainly no palpable error as there can be no reasonable possibility a manifest injustice occurred.

## III. Davis waived any challenge to the trial court's decision to shield Nicole from his line of sight

Davis next contends the trial court erred in failing to make a finding of a "compelling need" for Nicole to be shielded from his sight line during her testimony. He asserts the placing of a television set and other equipment between himself and Nicole while she was on the witness stand violated his constitutional right to confront his accuser. Our review of the record reveals Davis waived any challenge to the trial court's ruling.

> Almost all issues are subject to waiver, whether from inaction or consent, even in a criminal case, and "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999)[.] . . . The lone exception to this rule, of course, is when the question is whether the trial court had general *subject-matter* jurisdiction.

9

*Commonwealth v. Steadman*, 411 S.W.3d 717, 724 (Ky. 2013) (citations omitted).

Prior to trial, the Commonwealth filed a motion pursuant to KRS 26A.140 and 421.350 seeking to permit Nicole to testify via closed circuit television from outside the courtroom or, alternatively, to allow her to testify out of Davis's line of sight, citing the emotional trauma which would ensue from Nicole having to see Davis, a substantial probability she would then be unable to testify, and the emotional and physical consequences which would befall her following her testimony. A hearing was held on the motion approximately a week before trial, during which defense counsel acknowledged that "by statute they are entitled to" the requested accommodation. After Davis indicated his preference for using a whiteboard to shield Nicole from his view rather than having her testify via closed circuit television, the trial court noted its desire to protect Davis's confrontation rights and agreed to allowing placement of a whiteboard. Defense counsel further stated it was "fine" for Nicole to enter the courtroom in a way that would prevent her from having to see Davis.

At the beginning of the second day of trial and just before Nicole was to testify, defense counsel objected to the use of any screening and informed the trial court that although Davis had previously consented to using the whiteboard accommodation, he now believed based on an unnamed Court of Appeals opinion that the Commonwealth was required to show a compelling need prior to being granted an accommodation for a witness such as Nicole. In

10

response, the Commonwealth indicated the objection was untimely, especially considering Davis had consented to the accommodation at the pretrial hearing. The trial court overruled Davis's objection, noting there had been two pretrial conferences to handle all pending motions and plenty of time to argue the matter before trial commenced.

Davis now challenges the trial court's ruling on the Commonwealth's motion for an accommodation, asserting KRS 421.350 mandates a finding of a compelling need prior to allowing a child victim to testify outside the presence of the defendant. His argument fails for two reasons. First, by its plain language, KRS 421.350 is inapplicable as that statute concerns only child victim testimony taken outside the courtroom, and here, Nicole admittedly testified inside the courtroom. Second, and perhaps more importantly, Davis has waived the right to raise this argument. He never raised KRS 421.350 before the trial court as a basis for seeking relief so he cannot now present this new theory for the first time on appeal. Further, he explicitly consented to the use of a screening mechanism, objecting only at an untimely and inappropriate time to such screening. Davis is not now entitled to any relief.

### IV. There was no error in allowing KRE 404(b) evidence

Davis next posits the trial court erroneously permitted the Commonwealth to elicit testimony from Nicole about uncharged illicit sexual acts which occurred in Ohio. He contends the evidence served only to show he was predisposed to sexually assault a child and should have therefore been excluded. We disagree.

11

Although Davis argues to the contrary, we discern this issue was not properly preserved for appellate review. No objection to the introduction of this portion of Nicole's testimony appears on the record, nor have we been directed to a ruling by the trial court. The Commonwealth filed the required notice pursuant to KRE 404(c) indicating an intention to elicit other crimes evidence from Nicole during trial. The trial court convened a hearing on the notice the day before trial, but Davis challenged Nicole's proposed testimony only on competency grounds and noted alleged inconsistencies between statements she made during her investigatory interview and those he made to police during his own interview. No contemporaneous objection was lodged during Nicole's trial testimony. Thus, the issue is not preserved for appeal. However, in his reply brief, Davis has requested we undertake a palpable error review of this issue. As previously stated, an error is palpable only if it resulted in a manifest injustice. Upon review, we discern no error, much less palpable error.

Nicole was on the witness stand for approximately twelve minutes. When asked if Davis had ever touched her in a way she did not like, she testified Davis "raped" her. Upon subsequent questioning by the Commonwealth, she explained "rape" to her meant Davis touched her private parts with his penis, hands, and mouth. She stated these acts occurred on more than one occasion at her apartment and she also remembered things happening at "JuJu's house." On cross-examination, Nicole said she thought JuJu lived in Ohio. No other mention of any uncharged acts arose during Nicole's testimony.

12

KRE 404(b) regulates the admissibility of evidence of other crimes, wrongs, or acts. Such evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." *Id.* The Rule provides for two exceptions allowing such evidence to be admitted:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

*Id.* Furthermore, "evidence of similar acts perpetrated against the same victim are [sic] almost always admissible" to prove intent, plan, or absence of mistake or accident. *Lopez v. Commonwealth,* 459 S.W.3d 867, 875 (Ky. 2015) (quoting *Noel v. Commonwealth,* 76 S.W.3d 923, 931 (Ky. 2002)).

The question of whether uncharged misconduct should be admissible "confront[s] . . . courts with a difficult choice between protecting defendants against unfair prejudice and impeding the proof of charges by the prosecution." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.30[1][a] (2022 ed.). KRE 404(b) is "exclusionary in nature" and, as such, "any exceptions to the general rule that evidence of prior bad acts is inadmissible should be 'closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence.'" *Clark v. Commonwealth,* 223 S.W.3d 90, 96 (Ky. 2007) (quoting *O'Bryan v. Commonwealth,* 634 S.W.2d 153, 156 (Ky. 1982)). We review a trial court's decision to admit evidence

under KRE 404(b) for an abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007). Such an abuse occurs only when the trial court's ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, there was little more than a fleeting mention of Nicole recalling "things happening" while she and Davis were visiting JuJu's house. The Commonwealth quickly moved on from the topic and did not seek to obtain details of any uncharged occurrences. The testimony did not draw an objection for the defense and the trial court was never asked to rule on the appropriateness and admissibility of the evidence. We can perceive no prejudice suffered by Davis by this testimony, and certainly not sufficient harm to overcome the general rule permitting admission of similar acts perpetrated against the same victim. Furthermore, we are unpersuaded by Davis's suggestion that Nicole's brief mention of unspecified acts occurring in Ohio served only to show he was predisposed to sexually assaulting a child. There being no prejudice, no manifest injustice, and no showing the trial court abused its discretion, we conclude there was no error in Nicole's testimony, and undoubtedly no palpable error.

## V. Davis was not prevented from presenting a defense

For his fifth allegation of error, Davis contends the trial court erred when it prevented questioning of one of the investigating detectives about the use of

the "Reid Technique" of interrogation.[8]  On cross-examination, the detective was asked whether he had been trained in the technique and whether he was aware of the controversy surrounding its use.  The Commonwealth objected to further questioning on relevancy grounds and the trial court agreed.  Davis asserts the ruling was flawed and prevented him from presenting an entire defense.  We disagree.

Recently, in *Carson*, this Court analyzed the use of testimony regarding the Reid Technique.  621 S.W.3d at 447-51.  There, under direct questioning from the Commonwealth, a police officer described at length the methodology underlying the technique and was allowed to state he was able to use its behavioral analysis principles to determine from verbal and non-verbal cues that the defendant was being deceptive during the interview.  We held the officer's testimony went beyond the pale and infringed on the province of the jury as he claimed to have specialized knowledge beyond that of a lay witness which essentially gave him the ability to be a human lie detector.

On the contrary, in this matter it was the defendant who broached the subject matter, hoping to undermine the reliability of his own statement to police.  Further, a review of the recorded interview reveals no adversarialism or

---

[8]  The Reid Technique is "a multi-phase interrogation technique in which an investigating officer analyzes the suspect's behavior, looking for signs of deception, and then engages in a confrontational interrogation if they believe they spot such indicators." *Carson v. Commonwealth*, 621 S.W.3d 443, 446 (Ky. 2021).  Use of this method of interrogation has been subjected to great scrutiny and was one of the main motivating factors for the United States Supreme Court creating the *Miranda* warnings which are required to be given before any suspect can be interrogated.  *See Miranda v. Arizona*, 384 U.S. 436, 448-55 (1966).

deceptive or dismissive practices for which the Reid Techniques is known. The interview had previously been played for the jury and no concerns had been raised. Contrary to his assertion, we cannot discern any relevance to permitting further questioning regarding an interrogation method which was not actually used during his interaction with police. The trial court did not err in restricting this line of questioning.

## VI. Penalty phase testimony was improper but harmless

For his final assertion of error, Davis argues two detectives were permitted to give irrelevant testimony about the impacts of the investigation on Nicole. During the penalty phase, two investigating detectives testified for a total of approximately nine minutes. Pertinent to the issue raised by Davis, the first detective stated his first interview with Nicole was ended early because she "shut down" after her mother began crying and lost her composure and a second interview was only marginally better than the first. The other detective commented that upon speaking with staff at Nicole's school, he was informed Nicole would "be incontinent for a week or so" after any interaction with police.

Davis argues neither detective qualified as a "victim" under the definition of KRS 421.500[9] and therefore their testimony regarding the emotional impacts of the investigation on Nicole was infirm. Davis further contends the detectives'

---

[9] After defining the term "victim" as one who is directly harmed as the result of certain crimes, KRS 421.500(1)(a) states: "[i]f the victim is a minor, incapacitated, or deceased, 'victim' also means one (1) or more of the victim's spouse, parents, siblings, children, or other lawful representatives which shall be designated by the court[.]"

16

testimony was so improper and prejudicial that it incited the jury to give him the maximum sentence. These allegations of error are concededly unpreserved.

KRS 532.055(2)(a)(7) allows the Commonwealth to present evidence regarding "[t]he impact of the crime upon the victim or victims, as defined in KRS 421.500, including a description of the nature and extent of any physical, psychological, or financial harm suffered by the victim or victims[.]" We agree with Davis that based on the definition of "victim" in KRS 421.500, neither detective fits into that category, and further agree their testimony crossed the line to be considered victim impact testimony. However, we conclude the error was harmless and did not impact the outcome of Davis's trial.

Each detective's testimony was brief, gave a factual account of their experiences investigating the crimes, did not tend to over-dramatize the impacts of the crimes, and did not attempt to inflame the passions of the jury or appeal for sympathy. The testimony was plainly not extreme, emotional, or outrageous. Neither detective even alluded to the pending penalty decision nor made a recommendation of the appropriate course of action for the jury to take. Nevertheless, their testimony did constitute improper victim impact evidence as it tended to show the victim's mindset and the psychological impact the crimes and ensuing investigation had on her.

Although the detectives were not competent under the statutory language to qualify as "victims," we can discern no undue prejudice from the testimony. In no way could these brief statements be seen as having "substantially swayed" the verdict in the penalty phase. *See Winstead v. Commonwealth*, 283

17

S.W.3d 678, 688-89 (Ky. 2010) ("A non-constitutional evidentiary error may be deemed harmless [ ] if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error."). While the detectives' testimony regarding their difficulties in interviewing the child victim and her school personnel's dissatisfaction with her resulting behaviors was erroneous, there was no manifest injustice and thus the error does not rise to the level of palpable error warranting the reversal Davis seeks.

## CONCLUSION

For the foregoing reasons, the judgment of the Kenton Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Schmidt
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Kentucky Attorney General

Matthew R. Krygiel
Assistant Attorney General